**CSR LIMITED, Relator,**

v.

**The Honorable Scott LINK, Judge, Respondent.**

**No. 95–0933.**

Supreme Court of Texas.

Argued Dec. 13, 1995.

Decided June 14, 1996.

Rehearing Overruled Aug. 16, 1996.

Robin P. Hartman, Haynes and Boone, Dallas, Lynne Liberato, Beth Fancsali, Haynes and Boone, Houston, for relator.

Hartley Hampton, Young & Hampton, Houston, Marvin B. Peterson, Law Office of Marvin B. Peterson, Houston, Gary D. Elliston, DeHay & Elliston, Dallas, Jeffrey D. Roberts, Roberts Markel & Folger, Houston, James D. Smith, Dunn Kacal Adams Pappas & Law, Houston, T. John Ward, Brown McCarroll & Oaks Hartline, Longview, Kathryn Hermes, Patterson Lamberty Stanford & Walls, Dallas, Sharla J. Frost, James H. Powers, Powers & Frost, Houston, J. Michael Myers, Ball & Weed, San Antonio, Russell Ramsey, Ramsey & Murray, Houston, David W. Starnes, Strong Pipkin Nelson & Bissell, Beaumont, Jeffrey B. McClure, Butler & Binion, Houston, Mark R. Pharr, III, Galloway Johnson Tompkins & Burr, Houston, Richard N. Countiss, Law Office of Richard N. Countiss, Houston, James Mayer Harris, Holmes & Harris, Beaumont, David L. Lyle, Jr., Ness Motley Loadholt Richardson & Poole, Charleston, SC, Warren A. Gage, Cowles & Thompson, Dallas, Kevin J. Maguire, Strasburger & Price, Dallas, Robert E. Ballard, Abraham & Watkins, Houston, Stephen M. Vaughan, Mandell & Wright, Houston, F. Richard Leach, Ross Banks May Cron & Cavin, Houston, Gregg Morrison, Cook & Butler, Houston, C. Victor Haley, Fairchild Price Thomas & Haley, Center, Weldon Funderburk, Funderburk & Funderburk, Houston, Michael R. Ross, Law Offices of Michael R. Ross, Houston, John E. Williams, Jr., Williams Bailey & Wesner, Houston, Steven J. Kherkher, Williams Bailey Wesner & Kherkher, Houston, Ned Johnson, Johnson & Associates, Houston, John L. Hill, Liddell Sapp Zivley Hill & LaBoon, Houston, Peter A. Moir, Baker & Botts, Dallas, William J. Cozort, Jr., Bean & Manning, Houston, R. Lyn Stevens, Stevens & Baldo, Beaumont, Scott Baldwin, Baldwin & Baldwin, Marshall, Byron Sims, Brown Sims Wise & White, Houston, Brian S. Clary, Livingston & Markle, Houston, Sandra F. Clark, Mehaffy & Weber, Beaumont, Robert E. Thackston, Vial Hamilton Koch & Knox, Dallas, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, CORNYN, ENOCH, OWEN and ABBOTT, JJ., join.

This original proceeding concerns the exercise of personal jurisdiction over a foreign corporation by Texas courts. Although mandamus does not ordinarily lie from the denial of a special appearance, exceptional circumstances may warrant this extraordinary relief. In this case, we find that mandamus is appropriate and conditionally grant the writ.

## I.

CSR Limited is a corporation organized under the laws of New South Wales, Australia, with its principal place of business in Sydney, Australia. For a period of time before 1967, CSR was the agent for sales of raw asbestos fiber mined by a subsidiary, Australian Blue Asbestos Proprietary, Limited. The Johns–Manville Corporation purchased this raw asbestos fiber and resold it

in the United States. Johns–Manville was the only company marketing CSR's fiber in this country.

On August 23, 1957, CSR sold 363 tons of raw Australian blue asbestos to Johns–Manville. CSR sold the asbestos to Johns–Manville F.O.B. Fremantle, Australia, so that title to the fiber passed to Johns–Manville when Johns–Manville loaded the fiber onto the ship in Australia. Johns–Manville shipped the asbestos to Houston; the fiber was eventually used for the manufacture of transite pipe. The plaintiffs in the underlying suit allege that they were injured by exposure to CSR asbestos used to manufacture pipe.

Because of the large number of asbestos cases that have been filed, the Harris County district courts have created a Master Asbestos File under the authority of local rule. HARRIS COUNTY (TEX.) DIST. CT. LOC. R. 3.2.3(c); *In re: Asbestos Cases,* Cause No. 90–23333. The judge presiding over the Master Asbestos File rules on issues common to the individual asbestos cases in Harris County. Those rulings in the Master Asbestos File control all asbestos cases currently pending or that may be filed in Harris County. *See* Standing Order No. 2, *In re: Asbestos Cases,* Cause No. 90–23333 (Dist. Ct. of Harris County). CSR filed a special appearance in the Master Asbestos File asserting that the trial court lacked personal jurisdiction over the company. Judge Link, the respondent in this case, overruled the motion. The court of appeals denied CSR leave to file its petition for writ of mandamus. CSR now seeks mandamus relief in this Court to prevent the trial court from asserting personal jurisdiction over it.

## II.

■ A court must possess both subject matter jurisdiction over a case and personal jurisdiction over a party to issue a binding judgment. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701–03, 102 S.Ct. 2099, 2103–05, 72 L.Ed.2d 492 (1982). While subject matter jurisdiction refers to the court's power to hear a particular type of suit, personal jurisdiction concerns the court's power to bind a

particular person or party. *See* 1 CASAD, JURISDICTION IN CIVIL ACTIONS § 1.01 (2d ed.1991). This case involves the trial court's personal jurisdiction over CSR.

■ A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE § 17.042; *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). The long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant that does business in Texas. In addition to a discrete list of activities that constitute doing business in Texas, the statute provides that "other acts" by the nonresident can satisfy the requirement. *See* TEX. CIV. PRAC. & REM.CODE § 17.042; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991). Our Court has repeatedly interpreted this broad statutory language "to reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal,* 815 S.W.2d at 226; *see also U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977). Consequently, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *See Guardian Royal,* 815 S.W.2d at 226.

■ Under the Due Process Clause of the Fourteenth Amendment, a defendant must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528

(1985). A defendant should not be subject to the jurisdiction of a foreign court based upon "random," "fortuitous," or "attenuated" contacts. *Id.* Minimum contacts are particularly important when the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system. *See Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

A defendant's contacts with a forum can give rise to either general or specific jurisdiction. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *See Guardian Royal,* 815 S.W.2d at 228. In contrast, specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *See id.* at 227.

■ CSR is an Australian company headquartered in Sydney. It has no offices in Texas, no employees in Texas, and no bank accounts in Texas. CSR has not solicited business in Texas and has not sent any correspondence to Texas. CSR has never owned property in Texas and has never paid taxes in Texas. CSR has never entered into a contract in Texas. Under these facts, CSR did not have systematic and continuous contacts with Texas sufficient to support general jurisdiction.[1]

■ CSR also argues that the trial court does not have specific jurisdiction in this case because the company conducted no activity in or related to Texas. It is undisputed that CSR sold Johns–Manville a shipment of 363

tons of raw asbestos that was sent directly to Houston in August of 1957. But title to the asbestos passed to Johns–Manville in Australia and there is no evidence that CSR controlled or participated in the decision to ship the fiber to Texas. The plaintiffs contend, however, that CSR knew that one of Johns–Manville's plants was in Denison, Texas. The plaintiffs argue that CSR could have foreseen that its raw asbestos fiber would be used in Texas. Therefore, they argue, CSR should be subject to the personal jurisdiction of Texas courts.

■ Although foreseeability is a factor to consider in a minimum contacts analysis, foreseeability alone will not support personal jurisdiction. *See Guardian Royal,* 815 S.W.2d at 227. The defendant must take an action *"purposefully directed* toward the forum state" to be subject to the jurisdiction of its courts. *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032 (emphasis added). Assuming that CSR could have known that the raw asbestos it sold to Johns–Manville might be distributed in Texas, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* Additionally, CSR's knowledge that there was a Johns–Manville plant in Texas is not determinative in establishing jurisdiction because there are also Johns–Manville plants located in at least four other states: Louisiana, New Jersey, Illinois and California. *See State ex rel. CSR Ltd. v. MacQueen,* 190 W.Va. 695, 441 S.E.2d 658, 660 (1994). There must be some indication that CSR intended to serve the Texas market.

CSR did not advertise its asbestos in Texas. CSR did not provide advice to Texas buyers or have any sales agents in Texas. CSR did not "create, control, or employ" the distribution system that brought the asbestos into Texas. *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032. There is no direct evidence that

---

1. The plaintiffs claim that CSR waived the right to contest personal jurisdiction in Texas because of admissions CSR allegedly made before the West Virginia Supreme Court during unrecorded oral argument. *See State ex rel. CSR Ltd. v.*

*MacQueen,* 190 W.Va. 695, 441 S.E.2d 658 (1994). CSR disputes that contention. Because there is a dispute about what was said, we do not find a judicial admission that knowingly waives a constitutional right under these circumstances.

CSR knew that Johns–Manville would distribute its fiber in Texas. In short, the record contains no evidence that CSR took any act purposefully directed toward selling or distributing the raw asbestos fiber in Texas. Absent such a purposeful act, foreseeability alone cannot create minimum contacts between CSR and Texas. The Harris County courts, therefore, cannot exercise personal jurisdiction over CSR consistent with due process.

 In Texas, a nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). CSR has demonstrated that it had no systematic and continuous contacts with Texas, that it did not purposefully direct any act toward Texas, and that it took no act within Texas that gave rise to the plaintiffs' cause of action. We therefore conclude that CSR has carried its burden to negate all bases of personal jurisdiction.

### III.

 Because the trial court exceeded the limitations imposed by the Due Process Clause of the federal Constitution, it clearly abused its discretion in denying CSR's special appearance. We now decide whether CSR has met the second requirement for showing itself entitled to mandamus relief, that it does not have an adequate remedy by ordinary appeal. Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Mandamus is appropriate "only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985). Generally, increased cost and delay alone do not make an ordinary appeal an inadequate remedy. *Walker,* 827 S.W.2d at 842. Because in the ordinary case no circumstances apart from the increased cost and delay of trial and appeal are present, we have held that mandamus typically will not lie from the denial of a special appearance.

*See Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 307 (Tex.1994).

This Court has recognized, however, that in some situations a challenge to personal jurisdiction cannot be adequately remedied on appeal. For example, an ordinary appeal may be inadequate in cases involving family law or implicating comity in foreign affairs. *See id.* at 306–07. In addition, this Court has recognized that there may be other "extraordinary situation[s]" in which the denial of a special appearance cannot be adequately remedied on appeal. *Id.* at 309–10; *see also National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 776 (Tex.1995).

The extraordinary circumstances present in this case stem from the problems inherent in many, if not all, mass tort cases. Although only five plaintiffs have sued CSR in the present case, thousands of potential claimants exist based on possible exposure to transite pipes containing CSR asbestos since 1957.[2] *See, e.g.,* Reina, *Recovery for Fear of Cancer and Increased Risk of Cancer: Problems with Gideon and a Proposed Solution,* 7 REV. LITIG. 39, 40 (1987) (estimating that more than 21,000,000 American workers have been exposed to asbestos, with Texas being "one of the five states generating the greatest volume of asbestos-related litigation"). Mass tort litigation such as this places significant strain on a defendant's resources and creates considerable pressure to settle the case, regardless of the underlying merits. *See Matter of Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293, 1297, 1298–1300 (7th Cir.1995). The large number of lawsuits to which CSR could potentially be exposed is significant to our determination that appeal is not an adequate remedy in this case.

 The most efficient use of the state's judicial resources is another factor we consider in determining whether an ordinary appeal would provide an adequate remedy. Over 1490 asbestos cases are pending in Harris County alone as of April 30, 1996. HARRIS COUNTY DISTRICT COURTS, JUSTICE INFORMATION AND MANAGEMENT SYSTEMS (May 13, 1996) (public document available at Harris

---

2. As of June 11, 1996, CSR had been sued by approximately 1610 plaintiffs in at least twelve different lawsuits. DOCKET, 80TH DISTRICT COURT, HARRIS COUNTY, TEXAS (June 11, 1996).

County District Clerk's Office). As evidenced by the creation of the Master File in Harris County, asbestos litigation in Texas is complicated, potentially involves a multitude of parties, and is usually quite lengthy: "No litigation in American history has involved as many individual claimants, been predicated upon the severity of injury, [or] consumed as many judicial resources . . . as asbestos litigation." Brickman, *The Asbestos Litigation Crisis: Is There a Need for an Administrative Alternative?*, 13 CARDOZO L. REV. 1819, 1819 (1992). As a result, the state expends a large amount of its limited judicial resources resolving these massive controversies. Under these circumstances, a trial on the merits and appeal would further overtax the state's judicial resources. *See Walker,* 827 S.W.2d at 843. The Arizona Supreme Court has noted that "in cases of this magnitude, the interests of all parties and of the public demand that serious questions of law pertaining to . . . jurisdiction . . . be decided by this court and settled at the earliest possible moment." *United States v. Superior Court,* 144 Ariz. 265, 697 P.2d 658, 662 (1985). Because of the size and complexity of the asbestos litigation, the most prudent use of judicial resources in this case is to permit a preliminary resolution of the fundamental issue of personal jurisdiction by writ of mandamus.

Our approach of permitting mandamus relief from the denial of a special appearance only when personal jurisdiction is clearly and completely lacking and when there are exceptional circumstances is in accord with the approach of other jurisdictions. *See Canadian Helicopters,* 876 S.W.2d at 309–10 (citing *United States v. Superior Court,* 697 P.2d at 662; *Lupo v. Lineberger,* 313 Ark. 315, 855 S.W.2d 293, 294 (1993) (permitting writs of prohibition to lie only when a trial court is "clearly without jurisdiction or [has] acted without authority and the petitioner is unquestionably entitled to such relief"); *Conn v. ITT Aetna Fin. Co.,* 105 R.I. 397, 252 A.2d 184, 188 (1969) (finding that certiorari does not lie from preliminary jurisdiction rulings except if "the circumstances have been unusual or exceptional . . . or where not to act might result in irreparable injury or loss")); *see also State ex rel. Fogle v. Steiner,* 74 Ohio St.3d 158, 656 N.E.2d 1288, 1292 (1995)

(finding that although mandamus does not normally lie from the denial of a lack of jurisdiction, it will lie "where an inferior court patently and unambiguously lacks jurisdiction over the cause"). We emphasize that we do not relax or retreat from the requirement that a relator must show an inadequate remedy by appeal. While the question of personal jurisdiction is remediable by appeal in most cases, we hold that under the circumstances of this case, the concerns of judicial efficiency in mass tort litigation combined with the magnitude of the potential risk for mass tort actions against the defendant makes ordinary appeal inadequate.

## IV.

A single sale of 363 tons of raw asbestos in 1957 that was not purposefully directed toward this state is not sufficient to establish minimum contacts between CSR and Texas for personal jurisdiction. The trial court therefore clearly abused its discretion in denying CSR's special appearance. Although a writ of mandamus will not ordinarily lie from the denial of a special appearance, this case presents an extraordinary situation warranting such relief. Accordingly, we conditionally grant CSR's petition for writ of mandamus. This writ will only issue if the trial court fails to withdraw its order overruling CSR's special appearance.

GONZALEZ, J., concurs.

BAKER, J., dissents.

GONZALEZ, Justice, filed a concurring opinion.

"'As a moth is drawn to the light, so is a litigant drawn to the United States.'" *Dow Chem. Co. v. Castro Alfaro,* 786 S.W.2d 674, 707 (Tex.1990) (Hecht, J., dissenting) (quoting *Smith Kline & French Labs. Ltd. v. Bloch,* (1983) 2 All E.R. 72, 74). Texas courts seem to be the venue of choice. *See Alfaro,* 786 S.W.2d at 690 & n. 2 (Gonzalez, J., dissenting) (noting the danger of Texas becoming the forum for all mass-tort lawsuits); *Minnesota Mining & Mfg. Co. v. Nishika, Ltd.,* 885 S.W.2d 603, 639 (Tex. App.—Beaumont 1994, writ granted) (affirming $29,000,000 judgment in a suit between

Nevada, Georgia, and Minnesota corporations that involved no contacts with Texas). When a suit is brought against a party with no ties to Texas, it not only denies the non-forum defendant's constitutional rights, but it also clogs our already-crowded dockets. *Alfaro*, 786 S.W.2d at 690 (Gonzalez, J. dissenting). Denying a defendant's special appearance when the state clearly lacks personal jurisdiction is inherently harmful, both to the defendant and to our court system. Appeal is not an adequate remedy for such harm, and therefore mandamus relief is appropriate. I concur with the Court's judgment that mandamus should issue in this case. I disagree with the Court's opinion, however, because it retains the requirement that a relator challenging the denial of a special appearance by mandamus must make a specific showing of irreparable harm. Such proof is not necessary because the harm is inherent. Further, I would address the tension between our opinions in *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304 (Tex.1994) (orig.proceeding) and *National Industrial Sand Association v. Gibson*, 897 S.W.2d 769 (Tex.1995) (orig.proceeding).

Unfortunately, in this era of complex multi-party litigation, defendants must take a hard look at whether they can afford to defend a case regardless of the merits. One notorious example is a mass products-liability lawsuit pending in Morris County, in which it is claimed that the products of more that 300 defendants, including such items as paper clips, hand soap, marking pens, and metal tables, contributed to a "toxic cloud" that caused injury to more than 3,000 plaintiffs. *See generally Able Supply Co. v. Moye*, 898 S.W.2d 766 (Tex.1995) (orig.proceeding); *Union Carbide Corp. v. Moye*, 798 S.W.2d 792 (Tex.1990) (orig.proceeding); Hollandsworth, *The Lawsuit from Hell*, TEX. MONTHLY, June 1996, at 105, 141. Although the case had been pending for more than eight years, the plaintiffs had never been required to produce evidence or testimony linking their injuries to any of the defendants' products. *Able Supply*, 898 S.W.2d at 769. Despite this lack of evidence, many defendants have felt compelled to settle for millions of dollars and cut their losses. By September 1994, nearly 200 defendants had settled for more than $66 million, and it is not clear that the case is any closer now to being tried than when it was filed. Hollandsworth, *supra*, at 145.

The burdens of this sort of litigation are exacerbated when, as in this case, the defendant has no contacts with the forum state. Such defendants face demands of travel and time that go beyond "mere increased cost and delay." *Canadian Helicopters*, 876 S.W.2d at 308–09. More important is the damage done to the defendants' fundamental rights of due process under the state and federal constitutions. See *State ex rel. Connor v. McGough*, 46 Ohio St.3d 188, 546 N.E.2d 407, 410 (1989) (per curiam) (noting that fundamental notions of fairness and due process prohibited suit against a defendant who had no known contacts with the forum state "other than to attempt, unsuccessfully so far, to extricate himself from being sued here").

We have struggled with this issue, first in *Canadian Helicopters*, then in *National Industrial Sand*. In *Canadian Helicopters*, the Court denied mandamus relief to correct the special-appearance ruling in that case, but held that mandamus might be appropriate in some cases. The Court stated that mandamus might be available when the "trial court, in denying a special appearance, ... act[s] with such disregard for guiding principles of law that the harm to the defendant becomes irreparable, exceeding mere increased cost and delay." *Canadian Helicopters*, 876 S.W.2d at 308–09. The Court did not explain what that harm might be. In *National Industrial Sand*, we granted mandamus to correct a denial of a special appearance when the court clearly had no personal jurisdiction over the defendant. *National Indus. Sand*, 897 S.W.2d at 776. Although the holdings in *Canadian Helicopters* and *National Industrial Sand* are superficially consistent, it is clear that the application of the law to the facts in the two opinions is not reconcilable. The defendant in *Canadian Helicopters* had no more contacts with Texas than the defendant in *National Industrial Sand*. Thus, I would overrule *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992) (orig.proceeding) and its progeny, including *Canadian Helicopters*, to the extent they hold that a foreign defendant

with no ties to Texas must make a separate showing of harm before mandamus will issue to correct an order denying a special appearance.

BAKER, Justice, dissenting.

Because the Court improperly departs from sound precedent and in my opinion, invites an unnecessary increase in mandamus practice, I respectfully dissent.

## The Special Appearance and Mandamus Relief

When a trial court overrules a special appearance, the moving party ordinarily has an adequate remedy on appeal and consequently, may not secure extraordinary relief through mandamus. *K.D.F. v. Rex*, 878 S.W.2d 589, 592 (Tex.1994). On the few occasions this Court has considered the issue in an original proceeding, we have found mandamus relief available "only in limited circumstances." *See Canadian Helicopters v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994). These "limited circumstances" are cases involving sovereign immunity, comity and the parent-child relationship. Otherwise, we have held that mandamus relief for the denial of a special appearance is available only in extraordinary situations.[1] We have held extraordinary relief available only upon a showing that the trial court abused its discretion to the extent that it acted with "such disregard for guiding principles of law that the harm to the defendant becomes *irreparable*, exceeding mere increased cost and delay." *Canadian Helicopters*, 876 S.W.2d at 308–09 (emphasis added). Consequently, the relator must show that ordinary appeal is inadequate. *See Walker v. Packer*, 827 S.W.2d 833, 842 (Tex.1992); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 776 (Tex.1995)(Cornyn, J., dissenting).

## Special Appearance Hearing

The hearing on a special appearance is for the receipt of evidence and proof, "not just argument." *See* O'Connor & Davis, *O'Connor's Texas Rules * Civil Trials*, Ch. 3 § 7,

at 118 (1996); *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 n. 4 (Tex.1992). The non-resident defendant carries the burden of proof to negate all bases of personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985). On mandamus review, the relator has the burden of showing, based on the evidence presented to the trial court, an abuse of discretion and the inadequacy of ordinary appeal. *Canadian Helicopters*, 876 S.W.2d at 305.

## Abuse of Discretion–Standard of Review

In any mandamus proceeding, we review the trial court's decision for an abuse of discretion. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). To determine there is an abuse of discretion, we review the entire record. *See Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986). Our focus remains on the trial court order regardless of the court of appeals' decision. *Johnson*, 700 S.W.2d at 918. The party challenging the trial court's decision must establish that the facts and law permit the trial court but one decision. *Johnson*, 700 S.W.2d at 917.

An appellate court may not reverse for an abuse of discretion merely because it disagrees with the trial court's decision, if that decision was within the trial court's discretionary authority. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). The reviewing court must give deference to the trial court's resolution of a factual issue, and cannot set that decision aside unless it is clear from the record that the trial court could have reached only one decision. *See Walker*, 827 S.W.2d at 839–40.

An appellate court may not deal with disputed factual matters in a mandamus proceeding. *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex.1991); *Dikeman v. Snell*, 490 S.W.2d 183, 187 (Tex.1973). An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence reasonably sup-

---

**1.** *See Canadian Helicopters,* 876 S.W.2d at 308–09. Remarkably, Canadian Helicopter's "situation" and its argument to this Court were similar to CSR's "situation" and argument here. Nevertheless, the Court denied Canadian Helicopters mandamus relief.

ports the trial court's decision. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).[2]

An abuse of discretion does not exist if some evidence [3] in the record shows the trial court followed guiding rules and principles. *Morrow,* 714 S.W.2d at 298.

## Adequate Remedy on Appeal

In addition to showing that the trial court abused its discretion in reviewing the facts or in applying the law to the facts of a particular case, the relator must also make a mandamus record to show that ordinary appeal is not an adequate remedy. *See Canadian Helicopters,* 876 S.W.2d at 305. "This burden is a 'heavy one.'" *Canadian Helicopters,* 876 S.W.2d at 305. In its recent writings in the special appearance context, the Court has discussed this element in terms of forcing the non-resident to show "irreparable harm." *See National Sand,* 897 S.W.2d at 776; *Canadian Helicopters,* 876 S.W.2d at 305. I do not agree with this amorphous standard because it "snarl[s] mandamus law with new distinctions",[4] and as I discuss below, oversteps the bounds of mandamus review absent legislative or rules influence. Despite this unique and unfounded standard, the Court conducts a flawed analysis under the standard and provides CSR with an undeserved short cut to appellate relief.

## National Sand v. Canadian Helicopters

Unfortunately, I find today's opinion similar to *National Sand,* 897 S.W.2d at 769. In *National Sand,* the Court granted a defendant mandamus relief after the trial court denied its special appearance without any showing by the defendant that it did not have an adequate remedy on appeal. *See*

*National Sand,* 897 S.W.2d at 777 (Cornyn, J., dissenting). Here, as in *National Sand,* CSR has not shown that without mandamus relief, its harm will be "irreparable, exceeding mere increased cost and delay." *See Canadian Helicopters,* 876 S.W.2d at 308–09. In fact, the Court's opinion is based almost entirely on the assertions of CSR's counsel that without mandamus relief, CSR may be forced to defend itself in numerous trials, which could be both lengthy and complicated.[5] 925 S.W.2d at 596. The Court also relies on an unrelated case from the Seventh Circuit to declare that because "[m]ass tort litigation ... places significant strain on a defendant's resources," CSR is entitled to extraordinary relief. 925 S.W.2d at 596 (*citing Matter of Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293 (7th Cir.1995)). Here again, the Court misses the mark. CSR should not benefit from the Court's sympathetic logic drawn from a case in federal court involving different issues and different parties. Instead, we should require CSR to meet its heavy burden of showing irreparable harm.

CSR has not shown that the denial of its special appearance will compromise its ability to defend the underlying suit on the merits so that it will suffer irreparable harm. *Canadian Helicopters,* 876 S.W.2d at 308. The only proof directly from CSR in support of its special appearance is the affidavit of Edwin Anthony Smith, CSR's group manager of financial reporting. Despite his affidavit testimony that he is "familiar with the records of CSR Limited and the scope of CSR Limited's operations," Smith's affidavit does not provide any testimony, nor did CSR provide any other proof, that it would suffer irreparable harm by its continued presence in this

---

**2.** There is at least some dispute about whether CSR made admissions about its Texas contacts while arguing a case to the West Virginia Supreme Court. 925 S.W.2d at 595 n. 1. Nevertheless, and despite warnings that, "in cases turning on disputed factual issues, mandamus would not be proper," the Court decides today that the trial court abused its discretion. *See Canadian Helicopters,* 876 S.W.2d at 312 (Hecht, J., dissenting)(*citing Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex.1990)); *see also Huey,* 571 S.W.2d at 862 ("[a]n abuse of discretion does not exist where the trial court bases its decision[ ] on conflicting evidence.").

**3.** Part of my quarrel with the Court's opinion is that the majority reviews CSR's evidence in a light most favorable to CSR, which in effect, makes for a no evidence review. This is contrary to the more limited and proper standard of abuse of discretion.

**4.** *See Canadian Helicopters,* 876 S.W.2d at 311 (Hecht, J., dissenting).

**5.** While this Court's grant of writ may relieve CSR of defending itself in a Texas state court, it hardly relieves CSR from "numerous trials" in other states.

litigation pending an opportunity to pursue ordinary appeal. Absent such a showing, I cannot comprehend how the Court can rightfully conclude that CSR carried its burden of proving irreparable harm.

Although CSR's arguments about the trial court's lack of personal jurisdiction may be compelling, that issue ought to be resolved on appeal. As a majority of this Court recently stated:

> The mere fact that a trial court's erroneous denial of a special appearance will result in an eventual reversal on appeal does not mean that the trial will be a 'waste of judicial resources' as that term was used in *Walker*. To hold otherwise would mean that virtually any trial court order constituting reversible error would be a proper subject for mandamus review. Such a result is inconsistent with the rule that mandamus is an extraordinary remedy to be used only in limited circumstances.

*Canadian Helicopters*, 876 S.W.2d at 308 n. 11 (*quoting Walker v. Packer*, 827 S.W.2d at 843). As in *Canadian Helicopters*, regardless of whether the trial court in this case erred, this is not the type of extraordinary situation where this Court should consider mandamus. *See Canadian Helicopters*, 876 S.W.2d at 309. To decide differently leaves this Court and the courts of appeals without clear guidelines for mandamus review in special appearance cases—not to mention the guesswork trial courts face.

### Rule Change or Legislative Enactment

Beyond this Court's narrow exceptions that allow for mandamus relief when a trial court denies a special appearance, I believe that Rule 120a provides, at least by implication, that ordinary appeal is the remedy for the denial of a special appearance. *See* Tex.R. Civ. P. 120a(4).[6] Until *National Sand*, Texas courts interpreted the rule to

mean that if a party properly filed its special appearance, and unless the sovereign immunity/comity or parent-child exceptions applied, the moving party does not waive its special appearance and has an adequate remedy on appeal whenever the trial court denied its special appearance. *See, e.g., Aktienggesellschaft v. Kirk*, 859 S.W.2d 651, 652 (Tex.App.—Eastland 1993, orig. proceeding); *N.H. Helicopters, Inc. v. Brown*, 841 S.W.2d 424, 425–426 n. 1 (Tex.App.—Dallas 1992, orig. proceeding)(cited with approval in *Canadian Helicopters*, 876 S.W.2d at 306 n. 6); *Sullivan v. Tab Sales Co.*, 576 S.W.2d 137 (Tex.Civ.App.—Texarkana 1978, orig. proceeding); *Carpenter Body Works, Inc. v. McCulley*, 389 S.W.2d 331, 332 (Tex.Civ.App.—Houston 1965, writ ref'd), *cert. denied*, 382 U.S. 979, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966); *see also* Thode, *In Personam Jurisdiction; Article 2031B, The Texas "Long Arm" Jurisdiction Statute; And The Appearance To Challenge Jurisdiction In Texas and Elsewhere*, 42 Tex. L. Rev. 279, 332 (1964)(recognizing that "[t]he possible abuse of the interlocutory appeal as a vehicle for delay appears to outweigh the hardship presented by lack of an interlocutory appeal."). If Rule 120a should be changed to allow interlocutory appeal of an order on a defendant's special appearance, that change should be accomplished through the State Bar Rules Committee and in conjunction with the Court's rule-making authority, not by case law mandate. Amending Rule 120a to provide for interlocutory appeal of a denial of a special appearance as a part of a case would not be a novel addition to our rules of civil procedure. *See, e.g.,* Tex.R. Civ. P. 76a(8)(allowing for interlocutory appeal of order sealing court records).

Short of a rule change, the legislature could, if it desired, provide a statutory method for interlocutory appeal of the denial of a special appearance.[7] Again, this is not a

---

6. The rule provides:
 If the court sustains the objection to jurisdiction, an appropriate order shall be entered. If the objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose. Any such special appearance or such general appearance shall not be deemed a waiver of the objection to jurisdic-

tion when the objecting party or subject matter is not amenable to process issued by the courts of this State.
 Tex.R. Civ. P. 120a(4).

7. Commentators have recognized that a non-resident defendant may be highly inconvenienced by having to wait to appeal. However, they have

novel idea. The Texas Civil Practices and Remedies Code provides for interlocutory appeal of a number of pre-trial rulings. *See* Tex. Civ. Prac. & Rem.Code § 51.014.[8] In my view, before the Court allows interlocutory appeals as a matter of course, or "[b]ecause of the size and complexity" of a case, we should await word from the legislature. 925 S.W.2d at 597.

### The Court's Authorities Are Flawed

The Court relies upon four cases from other states to justify its "approach" today. *See United States v. Superior Court,* 144 Ariz. 265, 697 P.2d 658 (1985); *Lupo v. Lineberger,* 313 Ark. 315, 855 S.W.2d 293 (1993); *State ex rel. Fogle v. Steiner,* 74 Ohio St.3d 158, 656 N.E.2d 1288 (1995); *Conn v. ITT Aetna Fin. Co.,* 105 R.I. 397, 252 A.2d 184 (1969). Notwithstanding the fact that our mandamus jurisprudence is fully developed, and until recently, appeared well-settled under the *Walker* standard, all four cases are distinguishable.

In *United States v. Superior Court,* the Arizona Supreme Court gave way to its "general policy of declining jurisdiction" of an original proceeding because the case dealt with adjudication and quantification of water rights, "one of the most important issues conceivable in an arid state such as Arizona." *United States v. Superior Court,* 697 P.2d at 662. CSR does not invoke such an issue in this case.

In *Lupo,* the Arkansas Supreme Court considered whether it should provide extraordinary relief to a physician who the trial court ordered to testify by deposition. *Lupo,* 855 S.W.2d at 293. Not only did the supreme court deny the petitioner extraordinary relief, but the case did not involve a special appearance. *Lupo,* 855 S.W.2d at 295. It involved a discovery dispute not unlike our recent "apex" deposition case where we afforded mandamus relief to corporate executive after the trial court ordered him to appear for deposition. *Lupo,* 855 S.W.2d at 294–96; *see also Crown Cent. Petroleum Corp. v. Garcia,* 904 S.W.2d 125 (Tex.1995). *Lupo* is not instructive here.

In *Steiner,* the Ohio Supreme Court granted extraordinary relief to a mother involved in a custody battle over her two children against her estranged mother-in-law. *Steiner,* 656 N.E.2d at 1290. *Steiner* offers no support for today's opinion because this Court has previously recognized that an adequate remedy on appeal may be lacking in special appearance cases involving the parent-child relationship. *See Canadian Helicopters,* 876 S.W.2d at 307.

*Conn* is the only case closely analogous to today's facts; however, it is distinguishable also. The Supreme Court of Rhode Island decided *Conn* in 1969, at a time where, because of a "changing economy" and greater "means of communication and transportation," courts, "to keep pace," began "to relax the jurisdictional strictures of *Pennoyer v.*

---

urged that "[r]ather than the courts stretching the extraordinary remedy of mandamus to accommodate this need [for interlocutory review], the legislature could and should amend the Civil Practice and Remedies Code to contemplate interlocutory appeal of the denied special appearance." *See* Muldrow & Gray, *Treading the Mine Field: Suing and Defending Non-Residents in Texas State Courts,* 46 Baylor L. Rev. 581, 609 (1994).

**8.** The statute provides that:

A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

(1) appoints a receiver or trustee;
(2) overrules a motion to vacate an order that appoints a receiver or trustee;
(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

(4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;
(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state; or
(6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73.

Tex. Civ. Prac. & Rem.Code § 51.014.

*Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877)." *Conn,* 252 A.2d at 186. The *Conn* court allowed for interlocutory review of the denial of a corporate defendant's special appearance to interpret the state's new longarm statute and to "provide some guidance to the bar and to the courts on the scope of the statute...." *Conn,* 252 A.2d at 188. Except for the court's need to interpret the new longarm statute for "future litigation," the court would have denied extraordinary relief. *Conn,* 252 A.2d at 188. Over a quarter of a century has passed since the Supreme Court of Rhode Island decided *Conn.* Today's opinion is not necessary to explain anything to our state's bench and bar about now fully-evolved principles of personal jurisdiction. Consequently, *Conn's* logic does not support the Court's action here.

In some other states, courts have the benefit of a statutory guide or a rules device providing interlocutory relief following the denial of a special appearance or plea to the jurisdiction. *See, e.g., Miller v. Miller,* 506 So.2d 1084 (Fla.Dist.Ct.App.1987)(interlocutory relief allowed by Florida Rules of Appellate Procedure); *Healy v. Vaupel,* 133 Ill.2d 295, 140 Ill.Dec. 368, 549 N.E.2d 1240 (1990)(statute and rules of procedure allowed for interlocutory relief); *Byrd v. Ontario Freight Lines Corp.,* 39 N.J.Super. 275, 120 A.2d 787 (1956)(discussing availability of statute allowing for interlocutory review of personal jurisdiction issue); *Poret v. State Personnel Comm'n,* 74 N.C.App. 536, 328 S.E.2d 880 (1985), *overruled sub nom. on other grounds, Batten v. N. Carolina Dep't of Correction,* 326 N.C. 338, 389 S.E.2d 35 (1990)(immediate appeal of jurisdictional question allowed by statute); *United Erectors, Inc. v. Pratt & Lambert Corp.,* 338 Pa.Super. 577, 488 A.2d 43 (1985)(discussing Pennsylvania Rule of Appellate Procedure allowing interlocutory relief from order sustaining personal or in rem jurisdiction). We do not. Without statute or rule to provide interlocutory appeal, I do not believe mandamus is appropriate after the denial of a special appearance except in cases involving sovereign immunity, comity and child custody issues. These limited exceptions invoke important, and many times, immediate public policy concerns, which is not the case here, nor was it the case in *National Sand.*

The Court's recent decisions in this area are troubling, and I believe, confirm my views. Compare *National Sand,* 897 S.W.2d at 769 (providing mandamus relief for denial of special appearance) *with Canadian Helicopters,* 876 S.W.2d at 304 (denying foreign defendant mandamus relief after denial of special appearance). These decisions, along with today's opinion, do not square. There is little rhyme or reason to these cases except perhaps the amorphous standard of "clear and super clear" abuse of discretion. *See Canadian Helicopters,* 876 S.W.2d at 310 (Hecht, J., dissenting). As the Court has been reminded, hard cases make bad law. *See Robinson v. Central Tex. MHMR Ctr.,* 780 S.W.2d 169, 172 n. 1. (Tex.1989)(Hecht, J., dissenting). CSR's position in this case offers hard enough facts. Nevertheless, I believe that the Court's decision today sets bad precedent that adds uncertainty to pretrial rulings and, as a result, encourages litigants to unnecessarily file original proceedings.[9]

### The Road of No Return— Ignoring Precedent

As the Court recently reminded us, "we adhere to our precedents for reasons of efficiency, fairness, and legitimacy." *See Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex.1995)(Cornyn, J., joined by Gonzalez, Enoch and Spector, JJ.). "[I]f we [do] not follow our own decisions, no issue could ever be considered resolved." *Weiner,* 900 S.W.2d at 320 (Cornyn, J., joined by Gonzalez, Enoch and Spector, JJ.). Following *Canadian Helicopters, National Sand* and today's opinion, it is apparent that the Court has only paid lip service to its self-proclaimed

---

**9.** Following *National Sand* and today's opinion, one might ask what prudent Texas lawyer would advise a client to abide by Rule 120a(4). After today, there is little incentive to wait to appeal the denial of a special appearance when mandamus may be immediately available. Indeed, former Justice Barrow's mandamus "thicket" prophecy is now "reality." *Joachim v. Chambers,* 815 S.W.2d 234, 245 (Tex.1991)(Gonzalez, J., dissenting)(quoting *Jampole v. Touchy,* 673 S.W.2d 569, 578 (Tex.1984)(Barrow, J., dissenting)).

judicial edict that "stare decisis is a sound policy." *Weiner*, 900 S.W.2d at 320. The Court ought to practice what it preaches and "not succumb to a temptation to continually revisit prior decisions as new fact situations arise...." *See Weiner*, 900 S.W.2d at 332 (Owen, J., dissenting, joined by Phillips, C.J., and Hecht, J.). Mandamus should not issue simply because we disagree with a trial court's ruling. *See Buller*, 806 S.W.2d at 226.

Absent any legislative guidance, today's decision veers from the design of Rule 120a and bolts from precedent. Because today's decision can only lead the Court down a road of no return, I respectfully dissent.