Opinion filed March 23, 2006 












 
 
  
 
 







 
 
  
 
 




Opinion filed March 23, 2006   

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00007-CV 

                                                    __________

 

                  VIRTUAL HEALTHCARE SERVICES, LTD., Appellant

 

                                                             V.

 

                                       GLENN
LABORDE, Appellee

 



 

                                  On
Appeal from the County Court at Law No. 2

 

                                                          Taylor
County, Texas

 

                                                    Trial
Court Cause No. 2,298

 



 

                                                                   O
P I N I O N

In a single appellate issue, Virtual Healthcare
Services, Ltd. challenges the trial court=s
order granting the special appearance of Glenn Laborde, a Louisiana resident,
and the trial court=s take-
nothing judgment in favor of Laborde. 
Virtual Healthcare sought to hold Laborde personally liable for a
corporate debt under Tex. Tax Code Ann.
' 171.255(a) (Vernon 2002).  The issue in this appeal is whether Section
171.255(a) conferred specific personal jurisdiction over Laborde in Texas.
Based on the undisputed facts, we find that Section 171.255(a) did not confer
personal jurisdiction over Laborde in Texas. 
Therefore, we affirm the judgment of the trial court.








                                                               Background
Facts

Laborde was the sole shareholder, the sole
director, and the president of Cross Timbers Care Center, Inc., a Louisiana
corporation.  Cross Timbers had a
certificate of authority to transact business in Texas, and it operated a
nursing home in Flower Mound, Texas.  On
February 23, 2000, the Texas Comptroller of Public Accounts forfeited Cross
Timbers=s
corporate privileges in Texas for its failure to comply with franchise tax
requirements.

Between April 15, 2000, and July 15, 2000, Virtual
Healthcare provided nurse staffing services to Cross Timbers at its nursing
home in Texas.  When Cross Timbers failed
to pay for the services, Virtual Healthcare filed this cause against Cross Timbers
and its management company, Tutera Health Care Services, L.L.C., seeking to
recover the amount owed for the staffing services. Cross Timbers did not file
an answer to the suit, and the trial court entered an interlocutory default
judgment against Cross Timbers for $78,987.69, plus attorney=s fees, costs of court, prejudgment
interest, and postjudgment interest. 
Tutera answered the suit.

In an amended petition, Virtual Healthcare added
Laborde as a defendant, seeking to hold him personally liable for Cross Timbers=s debt under Section 171.255(a) of the
Tax Code.  Section 171.255(a) provides in
part as follows:

If the corporate privileges of a corporation are
forfeited for the failure to file a report or pay a tax or penalty, each
director or officer of the corporation is liable for each debt of the
corporation that is created or incurred in this state after the date on which
the report, tax, or penalty is due and before the corporate privileges are
revived.

 

Virtual Healthcare alleged that Laborde was personally liable for
Cross Timbers=s debt
because (1)  Laborde was a director and
officer of Cross Timbers and (2) the debt was incurred after Cross Timbers=s corporate privileges were forfeited.

Laborde filed his special appearance contesting
personal jurisdiction.  Virtual
Healthcare argued that Section 171.255(a) of the Tax Code conferred personal
jurisdiction over Laborde.  The trial
court granted Laborde=s
special appearance motion, dismissed Virtual Healthcare=s
claims against him for lack of jurisdiction, and entered a take-nothing
judgment in favor of Laborde.  Virtual
Healthcare nonsuited its claims against Tutera, and the trial court entered a
take-nothing judgment in favor of Tutera.








                                                                  Issue
on Appeal

Virtual Healthcare contends that, under Section
171.255(a), when a corporation forfeits its right to do business in Texas but
nevertheless continues to do business in Texas, the corporation=s acts are attributable to its
directors and officers.  Therefore,
Virtual Healthcare asserts that the directors and officers are personally doing
business in Texas and that Section 171.255(a), by implication, confers specific
personal jurisdiction over the directors and officers.

                                                         Special
Appearance Facts

The special appearance facts are undisputed.  On July 30, 1998, Cross Timbers, a Louisiana
corporation, filed an application for certificate of authority to transact
business in Texas with the Texas Secretary of State=s
office.  Laborde was the sole shareholder,
the sole director, and the president of Cross Timbers.  In its application, Cross Timbers provided
the address for its principal office in Louisiana as 200 West University Drive,
Hammond, Louisiana 70401.  Cross Timbers
stated that the address of its proposed registered office in Texas was 350 N.
St. Paul Street, Suite 2900, Dallas, Texas 75201, and that its proposed
registered agent in Texas was C T Corporation System.  Although the record does not contain a copy
of the certificate, the record indicates that the secretary of state issued a
certificate permitting Cross Timbers to transact business in Texas.  Cross Timbers operated a nursing home in
Flower Mound, Texas.

On October 28, 1999, the Texas Comptroller of
Public Accounts issued a notice stating that Cross Timbers=s franchise tax account was
delinquent.  On January 7, 2000, the
comptroller mailed the notice to Cross Timbers at the following address: ACross Timbers Care Center, Inc., 7611
State Line Rd., Ste. 301 c/o Tutera Group, Kansas City, MO 64114-1698.@ 
The record shows that Tutera was providing management services to Cross
Timbers under a management contract.  The
notice stated that Cross Timbers=s
corporate privileges in Texas would be forfeited unless Cross Timbers complied
with franchise tax requirements on or before February 22, 2000.








On February 23, 2000, the comptroller issued a
notice informing Cross Timbers that its corporate privileges had been forfeited
as of that date for failure to satisfy franchise tax requirements.  On March 3, 2000, the comptroller mailed the
notice to Cross Timbers, again sending it to Tutera=s
address.  On August 25, 2000, the
secretary of state forfeited Cross Timbers=s
certificate of authority to transact business in Texas.  Laborde stated in his affidavit that he and
Cross Timbers did not have actual notice of the forfeiture until January 2001,
when the Texas Department of Health informed Cross Timbers that its nursing
home license was in jeopardy due to the forfeiture of its corporate privileges.  Thereafter, on January 24, 2001, the
secretary of state reinstated Cross Timbers=s
certificate of authority to transact business in Texas.

Laborde also detailed his lack of contacts with
Texas in his affidavit.  He stated the
following:  (1) that he had not regularly
engaged in any business or transacted any business in Texas in his individual
capacity; (2) that he had never appointed an agent for service of process in
Texas in his individual capacity; (3) that he had never obtained a certificate
of authority to do business in Texas in his individual capacity; (4) that he
had never owned or leased any property in Texas in his individual capacity; (5)
that he had never had an address or a telephone number in Texas in his
individual capacity; (6) that he had never maintained any bank accounts in
Texas in his individual capacity; and (7) that he had never advertised for
business or for any other purpose in Texas in his individual capacity.

Laborde also stated that he had traveled to Texas on
some occasions during the last five years. 
He said that his travels to Texas had only been (1) in his capacity as
an officer of corporations that were general partners in limited partnerships
doing business in Texas and in his capacity as an officer of Cross Timbers (4-6
trips); (2) for the purpose of visiting his daughter in Texas (2-3 trips); and
(3) for the purpose of traveling through Texas to get to Missouri for business
trips (2-3 trips). He said that his travels to Texas had not been for any personal
business interests.

Laborde explained that he had no individual
dealings with Virtual Healthcare.  He
said that the contacts with respect to the staffing services in question were
between Tutera (Cross Timbers=s
management company) and Virtual Healthcare. 
Laborde said that his dealings with Tutera were in his capacity as
president of Cross Timbers.  Virtual
Healthcare=s
president, Scott Lee Taliaferro Jr., testified at the hearing on Laborde=s special appearance motion.  He said that no negotiations took place
between Virtual Healthcare and Asomeone
in Louisiana@ and that
he had not had any personal dealings with Laborde.

                                                              Standard
of Review








The plaintiff bears the initial burden of pleading
sufficient allegations to bring a nonresident defendant within the provisions
of the Texas long-arm statute.  Tex. Civ. Prac. & Rem. Code Ann. ''
17.041-.045 (Vernon 1997 & Supp. 2005); BMC Software Belgium, N. V. v.
Marchand, 83 S.W.3d 789, 793 (Tex. 2002). 
When the plaintiff meets this burden, the burden shifts to the
nonresident defendant to negate all possible grounds for personal
jurisdiction.  BMC Software, 83
S.W.3d at 793; Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203
(Tex. 1985).  The existence of personal
jurisdiction is a question of law which must sometimes be preceded by the
resolution of underlying factual disputes. 
Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex.
App.CHouston
[1st Dist.] 2000, pet. dism=d
w.o.j.).  In considering an order
granting or denying a special appearance, we may review a trial court=s findings on disputed factual issues
for both legal and factual sufficiency.  BMC
Software, 83 S.W.3d at 794.  However,
when the underlying facts are undisputed or otherwise established, we conduct a
de novo review of the trial court=s
order as a question of law.  BMC Software, 83 S.W.3d at 794;
El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.,
82 S.W.3d 622, 628 (Tex. App.CCorpus
Christi 2002, pet. dism=d
w.o.j.); Goodenbour v. Goodenbour, 64 S.W.3d 69, 75 (Tex. App.CAustin 2001, pet. denied); Preussag
Aktiengesellschaft, 16 S.W.3d at 113. 
In any event, in conducting its review, an appellate court considers all
of the evidence in the record.  El
Puerto de Liverpool, S.A. de C.V., 82 S.W.3d at 628.

                                                             Personal
Jurisdiction








A Texas court may assert personal jurisdiction
over a nonresident defendant only if the requirements of both the Due Process
Clause of the Fourteenth Amendment to the United States Constitution and the
Texas long-arm statute are satisfied.  CSR
Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).  The Texas long-arm statute permits Texas
courts to exercise jurisdiction over a nonresident defendant that does business
in Texas.  Section 17.042; BMC
Software, 83 S.W.3d at 795.  The
Texas long-arm statute reaches Aas
far as the federal constitutional requirements of due process will allow.@ 
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991).  We rely
on precedent from the United States Supreme Court and other federal courts, as
well as our own state=s
decisions, in determining whether a nonresident defendant has met its burden to
negate all bases of jurisdiction.  BMC
Software, 83 S.W.3d at 795.      Personal jurisdiction over nonresident
defendants is constitutional when two conditions are met: (1) the defendant has
established minimum contacts with the forum state, and (2) the exercise of
jurisdiction comports with traditional notions of fair play and substantial
justice.  BMC Software, 83 S.W.3d
at 795 (citing Int=l
Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The minimum contacts analysis requires that a
defendant Apurposely
avail@ itself
of the privilege of conducting activities within Texas, thus invoking the
benefits and protections of our laws.  Id.
(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475
(1985)).  The Atouchstone@ of due process analysis is Apurposeful availment.@ 
Michiana Easy Livin=
Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005).   The defendant=s
activities, whether they consist of direct acts within Texas or conduct outside
Texas, must justify a conclusion that the defendant could reasonably anticipate
being called into a Texas court.  Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex.
2002)(citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297
(1980)).  Jurisdiction is premised on
notions of implied consent that, by invoking the benefits and protections of a
forum=s laws, a
nonresident consents to suit there.  Michiana
Easy Livin= Country,
Inc., 168 S.W.3d at 785. A defendant is not subject to jurisdiction in
Texas if its Texas contacts are random, fortuitous, or attenuated.  Id.  Nor
can a defendant be haled into a Texas court based on the unilateral acts of a
third party.   Id. 
The quality and nature of the defendant=s
contacts with the forum state, rather than their number, are important in
analyzing minimum contacts.  Guardian
Royal, 815 S.W.2d at 230 n.11.








 A defendant=s contacts with a forum state can give
rise to either general or specific jurisdiction.  Guardian Royal, 815 S.W.2d at
227-28.  General jurisdiction is present
when a defendant=s
contacts are continuous and systematic, permitting the forum to exercise
personal jurisdiction over the defendant even if the cause of action did not
arise from or relate to the activities conducted within the forum.  CSR Ltd., 925 S.W.2d at 595.  General jurisdiction requires a showing that
the defendant conducted substantial activities within the forum, a more
demanding minimum contacts analysis than for specific jurisdiction.  Id. 
Specific jurisdiction is present when the cause of action arises from or
is related to the defendant=s
contact with the forum state.  Id.;
Guardian Royal, 815 S.W.2d at 227.  When specific jurisdiction is asserted, the minimum contacts analysis
focuses on the relationship among the defendant, the forum, and the
litigation.  Guardian Royal, 815
S.W.2d at 228.  The exercise of personal jurisdiction
is proper when the contacts proximately result from actions of the defendant
that create a substantial connection with the forum state.  Id. at 226.  The substantial connection between the
defendant and the forum must have resulted from the defendant=s purposeful conduct directed to the forum
and not from the unilateral activity of the plaintiff or others.  Id. at 226-27.

Virtual Healthcare alleged that Laborde was
personally doing business in Texas during the time that Cross Timbers=s corporate privileges were
forfeited.  Because Virtual Healthcare
met its burden of pleading jurisdictional facts, Laborde then had the burden to
negate all possible grounds for personal jurisdiction.  BMC Software, 83 S.W.3d at 793; Kawasaki
Steel Corp., 699 S.W.2d at 203. 
Laborde=s
affidavit established that he did not have the type of continuous and
systematic contact with Texas that is required for general jurisdiction.  Therefore, Laborde satisfied his burden of
negating general jurisdiction. 
Additionally, Virtual Healthcare does not argue that Laborde is subject
to general jurisdiction in Texas. 
Rather, Virtual Healthcare argues that Section 171.255(a) conferred
specific jurisdiction over Laborde.

Specific Jurisdiction and Section 171.255(a)

The sole issue on appeal is the specific
jurisdictional issue.  Therefore, we
limit our analysis of Section 171.255(a) to the jurisdictional issue, and we do
not address the merits of Virtual Healthcare=s
claim that Laborde is personally liable for Cross Timbers=s debt.

As stated, personal jurisdiction over nonresident
defendants is constitutional when two conditions are met: (1) the defendant has
established minimum contacts with the forum state, and (2) the exercise of
jurisdiction comports with traditional notions of fair play and substantial
justice.  BMC Software, 83 S.W.3d
at 795 (citing Int=l
Shoe, 326 U.S. at 316).  Neither requirement
was satisfied in this case.

Minimum Contacts

The minimum contacts analysis requires a finding
that Laborde Apurposefully
availed@ himself
of the privilege of conducting activities within Texas and, thus, invoked the
benefits and protections of our laws.  Burger
King, 471 U.S. at 475.  APurposeful availment@ is the predicate to justify a
conclusion that Laborde could have reasonably anticipated being called into a
Texas court.  World-Wide Volkswagen,
444 U.S. at 297; Am. Type Culture Collection, 83 S.W.3d at 806.








Section 171.255(a) provides notice to directors
and officers of corporations, such as Laborde, that they are personally liable
for the debts covered by the statute. 
All persons are presumed to know the law and are charged with knowledge
of provisions of statutes.  N. Laramie
Land Co. v. Hoffman, 268 U.S. 276, 283 (1925); Greater Houston Transp.
Co. v. Phillips, 801 S.W.2d 523, 525 n.3 (Tex. 1990).  But notice that they may be liable for
corporate debts does not justify a conclusion that nonresident officers and
directors could reasonably anticipate being called into a Texas court.  Cross Timbers Apurposefully
availed@ itself
of the benefits and protections of the laws of Texas; the same cannot be said
of Laborde under the undisputed facts.

Tutera, as Cross Timbers=s
management company, dealt with Virtual Healthcare for the staffing
services.  Laborde had no dealings with
Virtual Healthcare.  For a court to
exercise specific jurisdiction over a nonresident defendant, the defendant=s contacts with the forum must be
purposeful, and the cause of action must have arisen from or be related to
those contacts.  Guardian Royal,
815 S.W.2d at 227-28.  Laborde did not Apurposefully avail@ himself of the benefits and
protections of our laws.  His contacts
with Texas did not purposefully relate to Cross Timbers=s
dealings with Virtual Healthcare, and Virtual Healthcare=s
cause of action did not arise from any of Laborde=s
contacts with Texas.  The minimum
contacts requirement was not met.

Fair Play and Substantial Justice

The second requirement C
that the exercise of jurisdiction over Laborde comport with traditional notions
of fair play and substantial justice C
also was not satisfied.  Again, the
undisputed facts are relevant.

Section 171.255(a) is penal in nature, and its
provisions must be strictly construed.  Williams
v. Adams, 74 S.W.3d 437 (Tex. App.CCorpus
Christi 2002, pet=n
denied); Davis v. State, 846 S.W.2d 564 (Tex. App.CAustin 1993, no writ).  Because it is penal in nature, procedural
safeguards must be observed.

The special appearance evidence established that
the comptroller did not follow the statutes in forfeiting Cross Timbers=s corporate privileges in Texas.  When the comptroller proposes to forfeit the
corporate privileges of a corporation for failing to comply with franchise tax
requirements, the comptroller must mail notice of the proposed forfeiture to
the corporation.  Tex. Tax Code Ann. ''
171.251, 171.256 (Vernon 2002).  Section
171.256(c) provides as follows:

The comptroller shall mail notice to the
corporation at least 45 days before the forfeiture of corporate
privileges.  The notice shall be
addressed to the corporation and mailed to the address named in the corporation=s charter as its principal place of
business or to another known place of business of the corporation. 








 

Section 171.251 provides that the comptroller shall forfeit the
corporate privileges if the corporation does not comply with outstanding
franchise tax requirements within forty-five days after the mailing of the  notice of forfeiture.  

In this case, Section 171.256(c) required the
comptroller to mail the notice of forfeiture to Athe
address named in [Cross Timbers=s]
charter as its principal place of business or to another known place of
business of the corporation.@  In its application for certificate of
authority to transact business in Texas, Cross Timbers provided the address of
its principal office in Louisiana and the address of its proposed registered
office in Texas.  The comptroller did not
mail the notice of proposed forfeiture to either of these addresses.  Instead, the comptroller sent the notice to
Cross Timbers=s
management company, Tutera, in Kansas City. 
The mailed notice did not comply with statutory notice requirements. 

Laborde presented evidence establishing that he
and Cross Timbers did not know of the forfeiture of Cross Timbers=s corporate privileges until January
2001, when the Texas Department of Health informed Cross Timbers that its
nursing home license was in jeopardy due to the forfeiture. Cross Timbers
incurred its debt to Virtual Healthcare before Cross Timbers or Laborde had
knowledge of the forfeiture.  Because
Laborde did not have knowledge of the forfeiture when Cross Timbers incurred
the debt C either
by proper statutory notice from the comptroller to Cross Timbers or other
notice C we find
that an exercise of jurisdiction over Laborde would not comport with
traditional notions of fair play and substantial justice.  Laborde satisfied his burden to negate
specific jurisdiction.

The trial court did not err in granting Laborde=s special appearance motion.  Virtual Healthcare=s
sole appellate issue is overruled.

                                                               This
Court=s Ruling

We affirm the judgment of the trial court.

 

March 23,
2006                                                                       TERRY
McCALL

Panel consists of:  Wright, C.J., and                                          JUSTICE

McCall,
J., and Strange, J.