NUMBER 13-08-00528-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG

 


MCELROY MACHINE & 

MANUFACTURING COMPANY, INC. AND

DVCC SERVICES CORPORATION F/K/A 

PREDCO SERVICES CORPORATION Appellants,


v.
 


LUIS BELTRAN FLORES, Appellee.

 


On appeal from the 404th District Court

of Cameron County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Benavides

Memorandum Opinion by Justice Yañez 


 In this accelerated interlocutory appeal, appellants, McElroy Machine &
Manufacturing Company., Inc. ("McElroy Machine") and DVCC Services Corporation. f/k/a
Predco Services Corporation ("DVCC"), challenge the trial court's denial of their special
appearance. (1) Appellee is Luis Beltan Flores. Because we conclude that the trial court
lacked personal jurisdiction over appellants, we reverse the trial court's order and dismiss
the case against appellants.

I. Background

 Flores filed suit against McElroy/Catchot Winch Co. ("McElroy/Catchot"), Coastal
Marine Equipment, Inc. ("CME"), Ocean Marine, Inc. ("OMI"), Linwood Trawlers, Inc., the
M/V Capt. Linwood, Dolby Linwood, and appellants, alleging that he was injured by a
defective winch while employed as a seaman on the M/V Capt. Linwood. (2) Flores sued
appellants and OMI for negligence, gross negligence, misrepresentation, and products
liability.

 Appellants filed a special appearance alleging that the trial court lacked personal
jurisdiction over them; appellants attached the affidavits of DVCC's former president,
Anthony Frascella, and McElroy Machine's former president, Harold Catchot, to their
special appearance. After a March 24, 2008 hearing, the trial court denied appellants'
special appearance. This appeal ensued.

II. Personal Jurisdiction

A. Texas Long-Arm Statute

 A Texas court may exercise personal jurisdiction over a nonresident defendant only
if jurisdiction is authorized by the Texas long-arm statute. (3) Although the Texas long-arm
statute lists activities that constitute "doing business," this list is not exclusive, and "section
17.042's broad language extends Texas courts' personal jurisdiction 'as far as the federal
constitutional requirements of due process will permit.'" (4) The Due Process Clause of the
Fourteenth Amendment allows a Texas court to exercise personal jurisdiction over a
nonresident defendant when (1) the nonresident defendant has established minimum
contacts with Texas, and (2) the exercise of jurisdiction comports with "traditional notions
of fair play and substantial justice." (5)

B. Minimum Contacts

 A nonresident establishes minimum contacts with Texas by purposefully availing
itself of the privileges and benefits inherent in conducting business in the state. (6) There are
at least three aspects of our purposeful availment inquiry. (7) First, only the nonresident
defendant's contacts with the forum state are considered and not acts of a third person or
another party. (8) Second, the contacts must be purposeful and not "random, isolated, or
fortuitous." (9) Finally, the nonresident defendant must have sought "some benefit,
advantage, or profit by 'availing' itself of the jurisdiction." (10)

 A nonresident defendant's contacts with the forum state may create either specific
or general jurisdiction. (11) Specific jurisdiction exists if the nonresident defendant
purposefully directed his activities at a resident of Texas and the litigation arose from or
related to those contacts. (12) In other words, there must be a substantial connection
between the nonresident defendant's contacts and the operative facts of the litigation. (13) 
General jurisdiction exists when the defendant's contacts in the forum are continuous and
systematic; therefore, the forum may exercise personal jurisdiction over the nonresident
defendant "even if the cause of action did not arise from or relate to activities conducted
within the forum state." (14)

III. Standard of Review

 The plaintiff bears the initial burden of pleading "sufficient allegations to bring a
nonresident defendant within the provisions of the long-arm statute." (15) When a special
appearance is filed, the nonresident defendant assumes the burden of negating all bases
of personal jurisdiction asserted by the plaintiff. (16) The trial court determines the special
appearance by referring to the pleadings, any stipulations made by and between the
parties, any affidavits and attachments filed by the parties, discovery, and any oral
testimony. (17) Whether the trial court has personal jurisdiction over a defendant is a question
of law that this Court reviews de novo. (18) "When, as here, the trial court does not make
findings of fact and conclusions of law in support of its ruling, we infer 'all facts necessary
to support the judgment and supported by the evidence . . . .'" (19)

IV. Appellants' Special Appearance

 By their sole issue, appellants contend that they have not established minimum
contacts with Texas and that the exercise of jurisdiction over them does not comport with
traditional notions of fair play and substantial justice. Specifically, appellants argue that: 
(1) Flores did not plead sufficient jurisdictional allegations; (2) there is no basis for specific
jurisdiction because appellants' alleged liability does not arise out of and is not related to
any activity they conducted in Texas; (3) there is no basis for general jurisdiction because
appellants do not have sufficient continuous and systematic contacts with Texas to satisfy
due process; and (4) there is "no constitutionally permissible basis to assert personal
jurisdiction over [appellants] in this action."

A. Flores's Jurisdictional Allegations

 First, appellants assert that Flores did not plead sufficient jurisdictional allegations. 
We acknowledge that when the plaintiff fails to plead jurisdictional allegations, the
defendant must simply prove nonresidency to sustain its burden; however, we disagree
with appellants' assertion that Flores did not plead jurisdictional allegations invoking the
long-arm statute.

 In his live pleading, Flores alleged that he was injured by a defective winch that was
"originally designed, manufactured, assembled, and sold" by McElroy Machine and DVCC. 
Flores further alleged that appellants were liable for his injuries "under the doctrine of strict
product liability" and that appellants "committed acts of omission and commission, which
collectively and severally constituted negligence" that were the proximate cause of his
injuries and damages. Finally, Flores asserted that Cameron County, Texas, was the
"county in which all or a substantial part of the events or omissions giving rise to [his] claim
occurred" and that he is a resident of Texas.

 Liberally construing Flores's pleading, (20) we conclude that Flores's allegations that
he suffered an injury in Texas due to a defective winch manufactured by appellants are
sufficient to bring appellants under the long-arm statute. (21) Because Flores pleaded
sufficient jurisdictional allegations, upon filing their special appearance, appellants
assumed the burden of negating all bases of personal jurisdiction. (22)

B. Basis for Jurisdiction

1. General Jurisdiction

 McElroy Machine was incorporated under the laws of the state of Mississippi and
has never been incorporated under the laws of Texas. (23) DVCC was formerly incorporated
under the laws of New Jersey and has not been incorporated under Texas law. (24) Neither
McElroy Machine nor DVCC has been registered as a business organization with the
Texas Secretary of State, and neither has owned, operated, or managed a place of
business, branch office, or division in Texas. McElroy Machine and DVCC have neither
owned real property in Texas nor paid income taxes in Texas. None of McElroy Machine
and DVCC's officers or directors have been residents of Texas, and neither McElroy
Machine nor DVCC has recruited or trained employees in Texas. There is no evidence
that McElroy Machine or DVCC has bank accounts in Texas or has entered a contract in
Texas. Furthermore, McElroy Machine has not maintained its records in Texas and has
no shareholders in Texas. (25) Under these facts, neither McElroy Machine nor DVCC had
the systematic and continuous contacts with Texas sufficient to support general
jurisdiction. (26)

 Flores argues that Catchot's testimony that he sold products to a Texas corporation
and that sales agents for McElroy/Catchot solicited business from a Texas retailer is
sufficient to establish personal jurisdiction. However, because Flores's cause of action did
not arise from or relate to these alleged activities conducted within Texas, the trial court
had personal jurisdiction over appellants only if those contacts between appellants and
Texas were continuous and systematic. (27) Catchot testified at his deposition that sales
were made to a Texas corporation. According to Catchot, he sold discounted component
parts for replacement winches to a Texas dealer. Catchot did not specify whether the
sales were made by McElroy Machine or by McElroy/Catchot, and he did not state that
DVCC made any sales in Texas. (28) Nevertheless, in their affidavits, Catchot and Frascella 
stated, "Any business relationships between [McElroy Machine or DVCC] and any Texas
corporation comprised significantly less than 1% of the total business conducted by
[McElroy Machine and DVCC] during the time periods relevant to [Flores's] claims."

 The minimum contacts analysis becomes more demanding when determining
whether the nonresident defendant has established general jurisdiction with the forum
state; the contacts must be "substantial." (29) In other words, when general jurisdiction is
alleged, there must be "continuous and systematic contacts" between the nonresident
defendant and Texas. (30) In the present case, the business contacts with Texas were
sporadic and minimal at best and are insufficient to support general personal jurisdiction. (31) 
Therefore, we cannot conclude that continuous and systematic contacts between either
McElroy Machine or DVCC and Texas were established. (32)

2. Specific Jurisdiction

 Next, appellants assert that Flores has not established that jurisdiction is proper
under the stream-of-commerce theory. Appellants argue that they have taken no actions
to purposefully avail themselves of the benefits and protections of Texas law. Flores
counters that personal jurisdiction attached because it was foreseeable that the winches
sold by appellants would reach Texas." (33)

 "Merely releasing into the stream of commerce a product that comes to rest in
Texas is not sufficient to establish jurisdiction." (34) Placing a product into the stream of
commerce without additional conduct indicating an intent to serve the market of the forum
state is not an act of the defendant purposefully directed toward the forum state. (35) 
"Although foreseeability is a factor to consider in a minimum contacts analysis,
foreseeability alone will not support personal jurisdiction." (36) There must be some indication
that the nonresident defendant intended to serve the Texas market. (37) The stream of
commerce theory of jurisdiction is not satisfied by a single sale or a few sales from a
nonresident seller because it requires a "stream" and not a "dribble." (38)

 Moreover, the mere sale of products by a nonresident defendant to a Texas resident
is not sufficient to confer jurisdiction. (39) The evidence must show that the nonresident
defendant targeted marketing efforts in a state to generate business in that state. (40) When
a product is placed within the stream of commerce, additional conduct may indicate an
intent or purpose to serve the market of the forum state, including: (1) designing the
product for the market in the forum state; (2) advertising in the forum state; (3) establishing
channels for providing regular advice to customers in the forum state; or (4) marketing the
product through a distributor who has agreed to serve as the sales agent in the forum
state. (41)

 Although we acknowledge that foreseeability is only a factor to consider in our
minimum contacts analysis and it alone will not support personal jurisdiction, we can
consider it. (42) Here, appellants manufactured winches for shrimp boats, and it was
foreseeable that these shrimp boats would be used in Texas waters. The evidence shows
that appellants made sales of component parts for winches to a Texas corporation and
used sales agents to solicit those sales. This intent to serve the Texas market combined
with our consideration of the fact that it was foreseeable to appellants that winches they
manufactured would reach the Texas coast persuades us that appellants purposefully
availed themselves of the Texas courts.

 Our analysis, however, does not end there. Under specific jurisdiction, there must
be a substantial connection between the appellants' contacts with the forum state and the
operative facts of the litigation. (43) The operative facts of this case are that Flores was
injured by an allegedly defective winch on the M/V Capt. Linwood while in Texas waters. 
However, it is undisputed that the winch that allegedly caused Flores's injuries was sold
in Mississippi to an Alabama shipbuilder, not in Texas. Therefore, the winch that allegedly
injured Flores was not connected to appellants' contacts with Texas. Although appellants
sold component winch parts to a Texas corporation and at one time solicited sales to that
corporation, these sales are not substantially connected to the operative facts of this
litigation. (44) Therefore, based on the record before us, we conclude that appellants' sales
in Texas were too attenuated to satisfy specific jurisdictions's due process concerns. 
Furthermore, foreseeability alone will not support personal jurisdiction. (45)

3. Other Basis for Jurisdiction

 Finally, appellants assert that personal jurisdiction cannot be predicated on Flores's
remaining theories that: (1) in actions against a seaman's employer for personal injuries,
Flores is required, pursuant to maritime law, to sue his employer "only in the district of the
employer's residence or principal place office"; and (2) under maritime law, a seaman is
considered a "ward" of the court, and "[a]ny acts detrimental to the interest of the [trial
court's] ward are viewed with considerable suspicion." (46) Flores cites no authority, and we
find none, that allows a forum state to exercise personal jurisdiction over a nonresident
defendant merely because the plaintiff is a seaman. When determining whether the forum
has personal jurisdiction over the nonresident defendant, we must only consider the
nonresident defendant's contacts with the forum state and not acts of a third person or
another party. (47) We have already concluded that there is no general or specific jurisdiction
over appellants in this case; therefore, even if Flores must sue his employer in Texas and
is a ward of the state of Texas for purpose of federal supplemental jurisdiction, this is not
a basis for personal jurisdiction over appellants in a state court.

V. Conclusion

 Having determined that appellants negated all possible grounds for jurisdiction, we
sustain their sole issue. We reverse the trial court's order denying appellants' special
appearance and render judgment dismissing the case against appellants for lack of
personal jurisdiction. 



 ______________________

 Linda R. Yañez,

 Justice

Delivered and filed

the 11th day of February, 2010.
1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon 2008); Tex. R. App. P. 28.1.
2. McElroy/Catchot Winch Co., Coastal Marine Equipment, Inc., Ocean Marine, Inc., Linwood Trawlers,
Inc., the M/V Capt. Linwood, and Dolby Linwood are not parties to this appeal.
3. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2008) (permitting Texas courts to exercise
personal jurisdiction over nonresident defendants who are doing business in Texas). The Texas long-arm
statute, section 17.042, provides as follows:


 In addition to other acts that may constitute doing business, a nonresident does business in
this state if the nonresident:

 

 (1) contracts by mail or otherwise with a Texas resident and wither party is to
perform the contract in whole or in part in this state;

 

 (2) commits a tort in whole or in part in this state; or

 

 (3) recruits Texas residents, directly or through an intermediary located in this
state, for employment inside or outside this state.


Id.
4. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002) (quoting U-Anchor
Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977)).
5. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); BMC Software, 83 S.W.3d at 795; see U.S.
Const. amend. XIV, § 1; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) ("The Due
Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum
with which he has established no meaningful 'contacts, ties, or relations.'") (citing Int'l Shoe, 326 U.S. at 319).
6. Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575, 578 (Tex. 2007) ("[A] defendant must
seek some benefit, advantage or profit by 'availing' itself of the jurisdiction.") (quoting Michiana Easy Livin'
Country, Inc. v. Holten, 168 S.W.3d 777, 785 (2005)); Michiana, 168 S.W.3d at 784 ("For half a century, the
touchstone of jurisdictional due process has been 'purposeful availment.'"); see Burger King Corp., 471 U.S.
at 476.
7. Moki Mac, 221 S.W.3d at 575 (citing Michiana, 168 S.W.3d at 784-85).
8. Michiana, 168 S.W.3d at 785 ("[P]urposeful availment 'ensures that a defendant will not be haled
into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person.'") (quoting
Burger King Corp., 471 U.S. at 475) (internal quotations omitted)).
9. Id.
10. Id.
11. Moki Mac, 221 S.W.3d at 575.
12. Id. at 572-73.
13. Id. at 585 ("[W]e believe that for a nonresident defendant's forum contacts to support an exercise
of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts
of the litigation.").
14. BMC Software, 83 S.W.3d at 796.
15. Id. at 793.
16. Moki Mac, 221 S.W.3d at 574; BMC Software, 83 S.W.3d at 793; El Puerto de Liverpool, S.A. de
C.V. v. Servi Mundo Llantero, S.A. de C.V., 82 S.W.3d 622, 628 (Tex. App.-Corpus Christi 2002, pet. dism'd
w.o.j.).
17. Tex. R. Civ. P. 120a(3).
18. Moki Mac, 221 S.W.3d at 574; BMC Software, 83 S.W.3d at 794.
19. Moki Mac, 221 S.W.3d at 574 (quoting BMC Software, 83 S.W.3d at 795).
20. See Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004) (holding that in
determining plea to jurisdiction, pleadings are liberally construed in favor of pleader in assessing whether he
has pled sufficient facts to demonstrate trial court's jurisdiction); see also Tex. Civ. Prac. & Rem. Code Ann.
§ 17.042(2).
21. We note that although we have concluded that Flores pleaded sufficient allegations under the long-arm statute, the mere allegation that a tort occurred in Texas does not support jurisdiction over a defendant
under the Due Process Clause, which requires that the nonresident defendant purposefully avail itself of the
forum state's jurisdiction. See Michiana, 168 S.W.3d at 788, 791-92 ("Allegations that a tort was committed
in Texas satisfy the Texas Long-Arm Statute, but not necessarily the U.S. Constitution; the broad language
of the former extends only as far as the latter will permit. . . . [W]e disapprove of those opinions holding
that . . . specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts
themselves.").
22. See Moki Mac, 221 S.W.3d at 574; BMC Software, 83 S.W.3d at 793; El Puerto, 82 S.W.3d at 628.
23. McElroy Machine was merged into DVCC in 1999.
24. DVCC's corporate structure was terminated by way of corporate dissolution in 2007.
25. We note that Catchot testified that McElroy's records were destroyed by Hurricane Katrina.
26. See CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996).
27. See BMC Software, 83 S.W.3d at 796.
28. Catchot purchased the assets of McElroy Machine in 1999 and formed McElroy/Catchot Winch
Company.
29. CSR Ltd., 925 S.W.2d at 595.
30. Id.
31. See Conner v. ContiCarriers & Terminals, Inc., 944 S.W.2d 405, 417-18 (Tex. App.-Houston [14th
Dist.] 1997, no writ) (finding no general jurisdiction even though nonresident defendant: (1) was authorized
to do business in Texas; (2) had a registered agent for service of process in Texas; (3) filed franchise tax
returns in Texas; (4) sent barges to Texas ports for over ten years; (5) had contacts with Texas businesses;
(6) earned yearly revenue from barges loaded or unloaded in Texas; (7) hired Texas employees; (8) litigated
in a Texas court; and (9) had a gross revenue from 1991 to 1993 from barges unloading and loading in Teas
between $8,000 and $12,000).
32. See Helicopteros Nacionales de Colombia, S.A., v. Hall, 466 U.S. 408, 411 (1984) (holding that the
defendant's contacts with Texas was insufficient to establish general jurisdiction, even though the defendant
had negotiated the contract for transportation of the decedent with his employer in Texas, purchased
approximately eighty percent of its helicopter fleet from a Texas seller, and sent pilots and other personnel
to Texas to be trained); see also Internet Adver., Inc. v. Accudata, Inc., No. 05-09-00405-CV, 2009 Tex. App.
LEXIS 8859, at *18 (Tex. App.-Dallas Nov. 18, 2009, no pet.) (mem. op.) (concluding evidence that
nonresident defendant "had thirteen customers [in Texas] from which it derived less than one percent of its
revenues is simply not sufficient to establish 'continuous and systematic' contacts"); Arth Brass & Aluminum
Castings, Inc. v. Harsco Corp., 13-03-323-CV, 2004 Tex. App. LEXIS 681, at *3, 18-20 (Tex. App.-Corpus
Christi Jan. 23, 2004, no pet.) (mem. op.) (concluding that the percentage of 1.6 in sales by the nonresident
defendant to two Texas companies were minimal and the nonresident defendant did not "continuously and
systematically invoke the benefits and protections of the laws of the State of Texas to the extent that it
consented to being sued here").
33. Flores also argues that Catchot "specifically recognized the names of shrimp boat
manufacturers . . . in Cameron County, namely Zimco Marine and Marine Mart, as purchasers of winches from
his company." However, Flores does not allege that the winch that allegedly injured him was sold in Texas,
and he does not claim that Zimco Marine or Marine Mart built the M/V Capt. Linwood. Therefore, we do not
find this argument persuasive. Moreover, upon our review of the record, there is no evidence that the winch
that allegedly caused Flores's injury was sold in Texas. The evidence in the record establishes that OMI, an
Alabama corporation that built the M/V Capt. Linwood, purchased winches from McElroy Machine in
Mississippi. The evidence does not reveal whether the winch located on the M/V Capt. Linwood was actually
purchased from either McElroy Machine or DVCC.
34. M.G.M. Grand Hotel v. Castro, 8 S.W.3d 403, 409 (Tex. App.-Corpus Christi 1999, no pet.).
35. Asahi Metal Insustry Co. v. Superior Court of Cal., Solano County, 480 U.S. 102, 112 (1987).
36. CSR, 925 S.W.2d at 595.
37. Id.
38. Michiana, 168 S.W.3d at 786.
39. See Moki Mac, 221 S.W.3d at 575-76.
40. Id.; Michiana, 168 S.W.3d at 785.
41. Exito Electronics Co., LTD v. Trejo, 166 S.W.3d 839, 855 (Tex. App.-Corpus Christi 2005, no pet.)
(quoting CMMC v. Salinas, 929 S.W.2d 435, 438 (Tex. 1996)).
42. CSR, 925 S.W.2d at 595.
43. Moki Mac, 221 S.W.3d at 585.
44. Moki Mac, 221 S.W.3d at 579, 588 (concluding that the nonresident defendant had purposefully
availed itself of Texas jurisdiction under the stream of commerce theory but that the relationship between the
operative facts of the litigation and the nonresident defendant's promotional activities in Texas were "too
attenuated to satisfy specific jurisdiction's due-process concerns").
45. CSR, 925 S.W.2d at 595.
46. In a supplemental brief filed with leave of this Court, Flores argues that Texas has personal
jurisdiction over appellants because 28 U.S.C. section 1367 "mandates that the trial court continue to exercise
its jurisdiction over this proceeding." Section 1367 concerns the supplemental jurisdiction of federal district
courts to hear cases involving state claims that derive from a common nucleus of operative facts and would
be expected to be tried in one judicial proceeding. See Motient Corp. v. Dondero, 269 S.W.3d 78, 87 (Tex.
App.-Dallas 2008, no pet.). In other words, section 1367 pertains to the federal district court's subject matter
jurisdiction. Therefore, section 1367 is not relevant to our analysis of the state district court's exercise of
personal jurisdiction over appellants. See CSR, Ltd., 925 S.W.2d at 594 ("A court must possess both subject
matter jurisdiction over a case and personal jurisdiction over a party to issue a binding judgment.").
47. Michiana, 168 S.W.3d at 785 ("[P]urposeful availment 'ensures that a defendant will not be haled
into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person.'") (quoting
Burger King Corp., 471 U.S. at 475) (internal quotations omitted).