# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00574-CV

**Vertex Industrial, Inc., Appellant**

**v.**

**State Farm Lloyds as Subrogee of Jarom Heaton and Kristy Heaton, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
### NO. 18-1697-CC4, THE HONORABLE JOHN MCMASTER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Vertex Industrial Inc., a California corporation, appeals the denial of its special appearance. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7). State Farm Lloyds, as subrogee of Jarom and Kristy Heaton, sued Vertex and others, alleging causes of action arising out of a reverse-osmosis filtration system installed in the Heatons' home in Texas. In four issues on appeal, Vertex argues that the trial court erred by denying its special appearance because, in its view, its contacts with Texas are insufficient to confer general or specific personal jurisdiction. Because the trial court did not err by concluding that Vertex has sufficient contacts with Texas to establish specific jurisdiction and that exercising jurisdiction over it would not be unfair, we affirm.

## BACKGROUND

The Heatons bought a reverse-osmosis filtration system from a Texas-based distributor, and the system was installed under the kitchen sink in their home in Williamson County. In 2017, the Heatons discovered water damage allegedly caused by a failure of the system

or its parts. State Farm was the Heatons' insurer; paid them for repairs, property damage, cleaning expenses, and alternative living expenses; and became subrogated to their claims arising out of the system's alleged failure. State Farm sued the Texas distributor, two other parties, and Vertex to recover the roughly $33,600 that it spent reimbursing the Heatons.

In its live petition, State Farm alleged that the defendants designed, manufactured, or distributed the Heatons' system, bringing it from Vertex's California place of business into Texas. It also alleged that Vertex has contacts with Texas by, for example, doing business and operating here; placing the Heatons' system into the stream of commerce, knowing that it would end up in Texas; and not warning the Heatons of the system's dangers or defects.

In response to State Farm's petition, Vertex filed a Special Appearance and Motion to Dismiss, contending that the trial court could not exercise either general or specific personal jurisdiction. It attached to the special appearance a declaration by one of its officers, who provided facts showing why Vertex had insufficient contacts with Texas. State Farm responded to the special appearance and attached evidence of its own. The trial court held a hearing on the special appearance but heard only attorney argument and no more evidence. In an order reciting that it considered the special appearance, "the briefing and exhibits, and the argument of counsel," the court denied the special appearance, concluding that "it does maintain personal jurisdiction over Defendant Vertex in this matter." Vertex now appeals that order.

**APPLICABLE LAW AND STANDARD OF REVIEW**

A special appearance allows a nonresident to appear in a Texas court for the limited purpose of challenging the court's exercise of personal jurisdiction. *See* Tex. R. Civ. P. 120a(1). When personal jurisdiction is challenged, the plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *See Luciano v. SprayFoamPolymers.com, LLC*,

2

625 S.W.3d 1, 8 (Tex. 2021); *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). If the plaintiff meets this burden, the burden shifts to the defendant to negate all bases for jurisdiction in the allegations. *See Luciano*, 625 S.W.3d at 8; *Old Republic Nat'l Title Ins.*, 549 S.W.3d at 559.

"A defendant can negate jurisdiction either legally or factually." *TV Azteca, S.A.B. de C.V. v. Trevino Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016). "Legally, the defendant can show that the plaintiff's alleged jurisdictional facts, even if true, do not meet the personal jurisdiction requirements." *Id.* "Factually, the defendant can present evidence that negates one or more of the requirements, controverting the plaintiff's contrary allegations"—for example, evidence that the defendant has no contacts with Texas. *See id.*; *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). "The plaintiff can then respond with evidence supporting the allegations." *TV Azteca*, 490 S.W.3d at 36 n.4; *accord Kelly*, 301 S.W.3d at 658–59. Thus, a ruling on a special appearance often requires the trial court to resolve questions of fact. *Luciano*, 625 S.W.3d at 8; *see also* Tex. R. Civ. P. 120a(3) (listing evidence that court should consider when deciding special appearance).

When, as here, the court does not issue findings of fact for its special-appearance decision, we presume that all fact disputes were resolved in favor of the decision, and imply all relevant facts necessary to support the judgment that are supported by the evidence, unless they are challenged on appeal. *See Luciano*, 625 S.W.3d at 8; *M & F Worldwide Corp. v. Pepsi–Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). If the appellate record includes a reporter's record and a clerk's record, as it does in this case, the trial court's implied findings are not conclusive but may be reviewed for legal and factual sufficiency of the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). However, the ultimate determination

of whether a court has personal jurisdiction over a defendant is a question of law, which we review *de novo*. *See Luciano*, 625 S.W.3d at 8.

Texas's courts may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise is consistent with federal due-process guarantees. *Id.* The long-arm statute broadly permits jurisdiction over a nonresident if it "commits a tort in whole or in part in this state," Tex. Civ. Prac. & Rem. Code § 17.042(2); *Luciano*, 625 S.W.3d at 8, and allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit," *BMC Software Belg.*, 83 S.W.3d at 795. A state may exercise jurisdiction over a nonresident only if it has "minimum contacts" with the state and maintaining the suit in that state against the nonresident does not offend "traditional notions of fair play and substantial justice." *Luciano*, 625 S.W.3d at 8 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A nonresident's contacts with the state can give rise to either general or specific jurisdiction. *Id.* There is general jurisdiction when the nonresident's affiliations with the state are so "continuous and systematic" so that it is "essentially at home" in the state. *See id.* General jurisdiction requires substantial activities within the state and calls for a more demanding minimum-contacts analysis than does specific jurisdiction. *TV Azteca*, 490 S.W.3d at 37. When a court has general jurisdiction, it may exercise jurisdiction even if the cause of action did not arise from activities in its state. *Id.*

By contrast, specific jurisdiction "covers defendants less intimately connected with a state, but only as to a narrower class of claims." *Luciano*, 625 S.W.3d at 8 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). The minimum contacts necessary for specific jurisdiction exist if (1) the nonresident purposefully availed itself of the

privilege of conducting activities in the state and (2) the suit arises out of or relates to the nonresident's contacts with the state. *Id.* at 8–9 (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)).

Even if such minimum contacts have been shown, we also must consider whether exercising jurisdiction over the nonresident would offend "traditional notions of fair play and substantial justice." *Id.* at 18 (quoting *International Shoe*, 326 U.S. at 316). Only in rare cases will the exercise not comport with those notions when the nonresident has purposefully established minimum contacts with Texas. *Id.*

## SPECIFIC PERSONAL JURISDICTION

In its fourth issue, Vertex contends that specific jurisdiction over it in Texas cannot be maintained because while State Farm's is "a negligent design and manufacturing case," "the product was not designed, manufactured, or distributed" by Vertex in Texas. To address Vertex's issue, we consider State Farm's jurisdictional allegations, Vertex's special appearance and accompanying evidence, and evidence filed by State Farm in reply. *See* Tex. R. Civ. P. 120a(3) (stating that "[t]he court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony").

State Farm's jurisdictional allegations fall into five categories: (1) Vertex, like other of the defendants, was "doing business in Texas" and "operating in Texas"; (2) Vertex did business in Texas by placing the reverse-osmosis filtration system into the stream of commerce; (3) Vertex sold the system to the Texas distributor knowing that it would distribute the system in Texas; (4) even if Vertex did not itself manufacture the system, it marketed it in Texas because the system bore Vertex's trade name or trademark, *see* Restatement (Second) of Torts § 400 (1965);

5

and (5) Vertex did not warn the Heatons of the system's dangers or defects. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) ("When reviewing a trial court order dismissing a cause for want of jurisdiction, Texas appellate courts construe the pleadings in favor of the plaintiff and look to the pleader's intent." (internal quotation omitted)); *McDill v. McDill*, No. 03-19-00162-CV, 2020 WL 4726634, at *5 (Tex. App.—Austin July 30, 2020, pet. denied) (mem. op.) (liberally construing plaintiff's pleading in appeal over special appearance).

To negate the jurisdictional allegations, Vertex attached evidence to its special appearance—an unsworn declaration under penalty of perjury, *see* Tex. Civ. Prac. & Rem. Code § 132.001, by its Vice President and General Manager. He declared that Vertex is organized under California law; has a principal place of business in California; "does not have, and has never had, any place of business in Texas"; "does not maintain a registered agent" in Texas; "does not own or lease any real property in Texas" and has never done so; "does not own any personal property in Texas"; "does not pay any taxes in Texas"; "does not maintain any bank accounts, addresses or employees in Texas" and has never done so; and ships its products "F.O.B. Montclair, California." *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594–95 (Tex. 1996) (title to goods sold passed at F.O.B. site of loading onto ship). As for Vertex's products, he declared that Vertex "does not distribute its water filtration systems directly to consumers in Texas"; has "never sent any of its products directly to consumers in Texas nor solicited sales from individuals in Texas"; "sells its products to independent dealers who distribute its product throughout the United States"; "has no ownership interest in any of these independent dealers," who "are free to sell other manufacturers['] products" without "restrictions or limitations" on "how much [the distributors] are supposed to charge for Vertex products"; and "does not have contracts with any of these independent dealers and does not service its products after they are sold."

6

In response, State Farm filed evidence showing that in about the year before and two years after the alleged damage to the Heatons' home, Vertex had shipped water-quality-related products to the Texas distributor of the Heatons' reverse-osmosis filtration system in response to about two dozen purchase orders from the distributor. State Farm also filed evidence that Vertex had for some years been a member of a Texas "trade association representing the household, commercial, and industrial water quality improvement industry in Texas." Membership in the trade association required Vertex to "design . . . water treatment equipment in a manner . . . to comply with all applicable laws, ordinances or regulations in the State of Texas."[1]

To support specific jurisdiction, State Farm's allegations and evidence must show that (1) Vertex purposefully availed itself of the privilege of conducting activities in Texas, (2) the suit arises out of or relates to its contacts with Texas, and (3) exercising jurisdiction would not offend traditional notions of fair play and substantial justice. *See Luciano*, 625 S.W.3d at 8–9, 14 (citing *Bristol-Myers Squibb*, 137 S. Ct. at 1780).[2]

## I. Vertex purposefully availed itself of the privilege of conducting activities in Texas.

For products-liability suits like this one in which a manufacturer or designer sold its product "indirectly" to an ultimate Texas consumer through an independent distributor, the "stream of commerce" doctrine is useful when gauging the defendant's Texas contacts. *See id.* at 9 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010)). The "seller's awareness that the stream of commerce may or will sweep the product into the forum State does not convert

---

[1] State Farm offered other evidence discussed below.

[2] Reading its petition liberally, State Farm alleged that Vertex committed a tort in Texas because it alleged, for example, that Vertex sold the system that caused the Heatons damages knowing that it would end up in Texas, marketed the system in Texas, and did not warn the Heatons of the system's dangers or defects.

the mere act of placing the product in the stream into an act purposefully directed toward the forum State." *Id.* at 9–10 (internal quotation omitted). There must be more than that to support purposeful availing: "Texas courts require 'additional conduct' evincing 'an intent or purpose to serve the market in the forum State,' whether directly or indirectly." *Id.* at 10 (quoting *TV Azteca*, 490 S.W.3d at 46). Potential additional conduct includes advertising in Texas; setting up channels of regular communication to Texas customers; soliciting business in Texas through salespersons; designing the product for the Texas market; and creating, controlling, or employing the distribution system that brought the product into Texas. *See id.*; *Spir Star*, 310 S.W.3d at 873; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). Thus, while a nonresident need not have offices or employees in Texas to purposefully avail of the state, directing marketing efforts to Texas in hopes of soliciting sales may make the nonresident subject to Texas jurisdiction in suits arising from that business. *Luciano*, 625 S.W.3d at 10 (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)).

In this case, State Farm's evidence in support of its jurisdictional allegations shows that Vertex (1) placed systems like the Heatons' in the stream of commerce; (2) sold systems to the Texas distributor knowing that it would distribute them in Texas; (3) fulfilled the roughly two dozen purchase orders by the Texas distributor; (4) joined and participated in the Texas water-quality trade association; (5) was an exhibitor at three of the trade association's annual conventions, in Fort Worth, Montgomery, and San Antonio; and (6) sponsored a hole at the trade association's Texas golf tournament.

We conclude that Vertex's contacts with Texas, as established by State Farm's pleaded allegations and supporting evidence, are sufficient to show that Vertex purposefully availed itself of the privilege of conducting activities in Texas. We also cannot conclude that

8

Vertex's officer's declaration that title to the Vertex systems passes in California and not in Texas conclusively negates specific jurisdiction because the remaining quality and nature of the company's Texas activities show purposeful availing. *See id.* at 11 ("[W]here title passed is beside the point in the specific-jurisdiction analysis. Whether due process is satisfied depends rather on the quality and nature of the activity." (internal quotations and citation omitted) (quoting *International Shoe*, 326 U.S. at 319; *Spir Star*, 310 S.W.3d at 875)); *Spir Star*, 310 S.W.3d at 875–76 (concluding that defendant exhibited required "additional conduct" in Texas because although title to goods it sold passed outside Texas, it "reap[ed] substantial economic gain through its sales to" its Texas distributor).

Those other Texas activities—the required "additional conduct" on top of putting the system that went into the Heatons' home into the stream of commerce, *see Luciano*, 625 S.W.3d at 10—are shown by the combined force of the following, which we infer that the trial court found because the following is supported by the evidence:

- sales of water-quality-related goods to the Texas distributor, *see id.* at 11–12 (use of Texas distributor to ship goods to ultimate customers); *Spir Star*, 310 S.W.3d at 874–76 (directly targeting Texas market via Texas distributor despite receiving none of distributor's profits and title to goods passing outside Texas);

- joining the Texas water-quality trade association and using it to market Vertex in Texas, *see Luciano*, 625 S.W.3d at 12 (tapping into Texas market via Texas sales representative irrespective of sales volume realized through representative's efforts);

- committing, as a member of the trade association, to comply with Texas laws and regulations, thereby evincing an intent to serve the Texas market, *see Moki Mac River Expeditions*, 221 S.W.3d at 577–78 ("seller intended to serve the Texas market" along with "advertising and establishing channels of regular communication to customers in" Texas, including through "advertisements in a variety of nationally circulated publications that have Texas subscribers" and "advertisement in the *Austin Chronicle*"); and

- placing Vertex's trade name or trademark on the Heatons' system, *see Spir Star*, 310 S.W.3d at 877 (use of defendant's trade name for in-Texas sales).

Besides purposeful availing, to support specific jurisdiction State Farm's suit must arise out of or relate to Vertex's Texas contacts. *See Luciano*, 625 S.W.3d at 14. We turn to that topic.

## II. State Farm's suit is sufficiently related to Vertex's Texas contacts.

The "relatedness" inquiry involves the appropriate nexus between the nonresident, the litigation, and the forum. *Id.* (quoting *Moki Mac River Expeditions*, 221 S.W.3d at 579). It is satisfied by a substantial connection between the nonresident's contacts and the operative facts of the litigation. *Id.* (quoting *Moki Mac River Expeditions*, 221 S.W.3d at 585). There must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. *Id.* (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780). In other words, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction. *Id.* (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780). Because the suit may *either* arise out of *or relate to* the defendant's forum contacts and still support jurisdiction, the contacts need not have caused the suit but can simply support "some relationship[] . . . support[ing] jurisdiction without a causal showing." *See id.* at 15 (quoting *Ford Motor*, 141 S. Ct. at 1026).

State Farm's allegations and special-appearance evidence support the required findings. It alleged that Vertex does business in and operates in Texas, sold the Heatons' system to the Texas distributor knowing that it would distribute the system in Texas, and did not warn the Heatons. Vertex's special-appearance evidence sought to negate the first allegation but did not negate the latter two. For example, Vertex's declarant said that Vertex "sells its products to

10

independent dealers who distribute its product throughout the United States," but this does not negate the allegations that one of those distributors was based in Texas and Vertex sold products to it several times. Supporting its allegations, State Farm's evidence showed that Vertex has sold other water-quality-related products to the same Texas distributor and has advertised through the Texas water-quality trade association, suggesting its intent to serve the Texas market. This creates the required "substantial connection"—one existing between the Heatons' allegedly defective system, other similar products that Vertex sold knowing that they would end up in Texas, and its advertising in Texas in the water-quality market. *See Ford Motor*, 141 S. Ct. at 1028–29 (specific jurisdiction existed when defendants advertised same models of cars that allegedly injured plaintiffs to residents of forum states despite fact that plaintiffs' cars were bought outside forum states); *Luciano*, 625 S.W.3d at 16–17 (specific jurisdiction existed when suit arose from injuries sustained from product installed in Texas home and defendant sold other of same product in Texas and despite fact that plaintiffs' particular product might have been bought outside Texas); *cf. Moki Mac River Expeditions*, 221 S.W.3d at 585–88 ("relatedness" requirement not met when injuries were sustained during hike outside Texas and future jury could assess alleged in-Texas misrepresentations "[o]nly after thoroughly considering the manner in which the [outside-Texas] hike was conducted"). We infer that the trial court made the required "relatedness" findings because they are supported by the evidence.

Besides purposeful availing and "relatedness," the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *See Luciano*, 625 S.W.3d at 18 (quoting *International Shoe*, 326 U.S. at 316). We turn last to that topic.

11

**III.    Texas jurisdiction over Vertex would not offend traditional notions of fair play and substantial justice.**

We decide this topic in light of (1) the burden on Vertex, (2) Texas's interests in adjudicating the suit, (3) State Farm's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interest of several states in furthering fundamental substantive social policies. *See id.* at 18–19.

The first factor favors Texas jurisdiction because Vertex "exercise[d] the privilege of conducting activities within" Texas, and the fact that its place of business is elsewhere does not defeat jurisdiction under this factor. *See id.* at 19. The second also supports jurisdiction because Texas has an interest in exercising jurisdiction in suits arising from injuries sustained from allegedly defective products purposefully brought into the state and installed in Texas homes. *See id.*; *see also Ford Motor*, 141 S. Ct. at 1029–30 ("allowing jurisdiction in these cases treats Ford fairly" because forums' courts should enforce not only Ford's "commitment" to manufacturing safe cars for forums' residents but also "contracts, the defense of property, and the resulting formation of effective markets," all of which benefit Ford when conducting activities in forums). The third factor favors Texas jurisdiction because Texas is where the witnesses related to the distributor–Heaton sale, the home installation, and the alleged damages to the home reside. *See Luciano*, 625 S.W.3d at 19. The fourth factor favors Texas jurisdiction, and not California, which Vertex argued for in the special-appearance hearing, because although the first point of sale for the system was "F.O.B. . . . California," the Heatons and other witnesses reside in Texas and the alleged damages occurred in Texas. *See Ford Motor*, 141 S. Ct. at 1030; *Luciano*, 625 S.W.3d at 19. Under the fifth factor, the parties do not raise any differing fundamental substantive social policies between California and Texas about the need to redress products injuries, if proven, so

12

this factor is inconclusive. In all under the factors, exercising specific jurisdiction over Vertex in Texas would not offend traditional notions of fair play and substantial justice. *See Luciano*, 625 S.W.3d at 19.

Because of this, and because Vertex purposefully availed itself of the privilege of conducting activities in Texas and those activities are sufficiently related to State Farm's suit, we hold that the trial court did not err by denying the special appearance. State Farm's allegations and evidence, even in the face of Vertex's evidence, sufficiently supported the trial court's decision. We thus overrule Vertex's fourth issue.

Because the trial court properly denied the special appearance based on specific jurisdiction, we need not consider Vertex's other issues, which concern general jurisdiction. *See* Tex. R. App. P. 47.1; *Luciano*, 625 S.W.3d at 8 (to support suit personal jurisdiction may be either general or specific).

## CONCLUSION

We affirm the trial court's denial of Vertex's special appearance.

_____
Chari L. Kelly, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed: August 20, 2021