**CONDITIONALLY GRANT and Opinion Filed September 16, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00495-CV**

**IN RE SMITH & NEPHEW ORTHOPAEDICS LTD. AND SMITH & NEPHEW PLC, Relators**

**Original Proceeding from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-02106**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Carlyle
Opinion by Justice Schenck

In this original proceeding, relators Smith & Nephew Orthopaedics Ltd. and Smith & Nephew PLC seek relief from the trial court's order granting the real parties in interest's motion to compel a corporate-representative deposition on jurisdictional issues. Relators contend the trial court abused its discretion by ordering them to comply with overly broad discovery requests unmoored to establishing specific jurisdiction over them. After reviewing the petition, response, reply, and the record, we have determined relators are entitled to relief from the trial court's order. Therefore, we conditionally grant relators' petition.

## BACKGROUND

The underlying proceeding arises out of five hip–replacement surgeries performed in 2009 and 2010. As relevant here, real parties, plaintiffs below, allege relators defectively designed, manufactured, and marketed metal-on-metal components that the surgeons implanted in their hips—including the Smith & Nephew modular femoral heads and, in two instances, a Smith & Nephew R3 acetabular metal liner.

Relators are United Kingdom entities. They specially appeared in this case to contest the trial court's ability to exercise personal jurisdiction over them. Real parties contend the trial court has specific jurisdiction over relators. Most of their jurisdictional allegations are not specific to Texas, but rather address relators' alleged contacts with the United States generally. More particularly, they allege the following:

- Relators "began with the first thought of selling devices in America fifteen years ago until the recall of various Device Components used in Plaintiffs in 2012 and 2015."

- At the direction of relators, over fifty hand-picked U.S. surgeons were flown to the United Kingdom for certification training from Smith & Nephew Orthopaedics Ltd. employees and consultants at Smith & Nephew facilities overseas.

- Smith & Nephew PLC "sent its agents to the United States to take control over every significant decision that had any impact on the sale of the Smith & Nephew hip implants in America."

- Relators' executives "came to Texas to purposefully and directly sell the Device Components involved in Plaintiffs' surgeries."

- Smith & Nephew Orthopaedics Ltd. was involved in designing, developing, testing, manufacturing, assembling, promoting, labelling, packaging, advertising, marketing, distributing, selling, and withdrawing of the Device Components."

- Smith & Nephew Orthopaedics Ltd. employees and other Smith & Nephew "Metal-on-Metal Technology Group" members directed the global marketing for Smith & Nephew's metal-on-metal hip portfolio—they spoke with, advised, ordered, and otherwise interacted with United States and Texas Smith & Nephew employees, sales representatives, and distributors about selling the devices at issue in this lawsuit."

- Smith & Nephew Orthopaedics Ltd. employees told Dallas doctors in writing that the device components could be used in total hip arthroplasties.

- By late 2005, relators had "generated interest in its Birmingham Hip Modular Head System amongst U.S. surgeons by satellite broadcasting a live surgery" in which they "promoted the use of the Smith & Nephew modular femoral head with a BHR Acetabular Cup in a total hip replacement," which created significant interest in the U.S. and Texas specifically. As a result, Smith & Nephew executives "eagerly began making plans to market their new products in America."

In response to relators' special appearances, real parties filed a motion to compel a corporate-representative deposition regarding jurisdictional contacts. The motion included the following ten deposition topics:

1. Identify any of YOUR employees who traveled to Texas for business purposes during the years 2005-2012;

    (a) For any employees identified in topic 1, STATE the dates of travel, location(s) in Texas they traveled, and state duration of time spent in Texas;

    (b) For any employees identified in topic 1, state the specific business purposes that they traveled to Texas for;

(c) For any employees identified in topic 1, IDENTIFY any health care providers, sales representatives, and Smith & Nephew, Inc. employees they spoke with during their business trip to Texas;

2. Identify any of YOUR employees who communicated with Texas orthopedic surgeons for business purposes during the years 2005-2012;

(a) For any employees identified in topic 2, STATE the dates of communication, identity of the surgeon(s), and reason(s) for the communications;

3. Identify any of YOUR employees who communicated with Texas Smith & Nephew sales representatives for business purposes during the years 2005-2012;

(a) For any employees identified in topic 3, STATE the dates of communication, identity of the sales representative(s), and reason(s) for the communications;

4. Identify any hip arthroplasty orthopedic devices that YOU manufacture(d) that were marketed in the United States between the years 2005-2012;

5. Identify any of YOUR directors/non-employee executives who traveled to Texas for business purposes during the years 2005-2012;

(a) For any directors/non-employee executives identified in topic 5, STATE the dates of travel, locations(s) in Texas they traveled, and state duration of time spent in Texas;

(b) For any directors/non-employee executives identified in topic 5, state the specific business purposes that they traveled to Texas for;

(c) For any directors/non-employee executives identified in topic 5, IDENTIFY any healthcare providers, sales representatives, and Smith & Nephew, Inc. employees they spoke with during their business trip to Texas;

6. Identify any of YOUR directors/non-employee executives who communicated with Texas orthopedic surgeons for business purposes during the years 2005-2012;

   (a) For any directors/non-employee executives identified in topic 6, STATE the dates of communication, identity of the surgeon(s), and reason(s) for the communications;

7. Identify any of YOUR directors/non-employee executives who communicated with Texas Smith & Nephew sales representatives during the years 2005-2012.

   (a) For any directors/non-employee executives identified in topic 7, STATE the dates of communication, identity of the sales representative(s), and reason(s) for the communications;

8. IDENTIFY any Texas residents that YOU contacted for business purposes between the years 2005-2012;

9. IDENTIFY any documents that YOU signed between 2005-2012 that relate to Texas business activities;

10. Explain why Mark Waugh was a Smith & Nephew Orthopaedics Ltd. [sic] from 2009-2011, and describe his role and duties for that position.

Opposing the motion, realtors argued that the topics are overly broad and not reasonably tailored to discover facts supporting the existence of specific jurisdiction.

After a hearing, on May 13, 2022, the trial court granted the motion to compel. The court ordered realtors to produce corporative representatives on each of the ten topics requested by real parties within fifteen days of the order. This original proceeding followed with this Court issuing a stay of the May 13 order.

**AVAILABILITY OF MANDAMUS RELIEF**

Mandamus is an extraordinary remedy that is available only in limited circumstances. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig.

–5–

proceeding). Mandamus will issue if the relator establishes a clear abuse of discretion for which there is no adequate remedy by appeal. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 125, 135–36 (Tex. 2004) (orig. proceeding)). "Generally, the scope of discovery is within the trial court's discretion, but the trial court must make an effort to impose reasonable discovery limits." *Id.* (quoting *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam)). General principles that limit the scope of discovery also apply equally to jurisdictional discovery. *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 678 (Tex. 2022) (orig. proceeding). The discovery requests must be reasonably tailored and not overbroad. *Id.* An order that compels discovery well outside the bounds of proper discovery is a clear abuse of discretion for which mandamus is the proper remedy. *Deere*, 299 S.W.3d at 820.

## DISCUSSION

### I. Personal Jurisdiction

A court must possess both subject matter jurisdiction over a case and personal jurisdiction over the parties to issue a binding judgment. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996)). The United States Constitution permits "a state court [to] take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair

play and substantial justice." *CMMC v. Salinas*, 929 S.W.2d 435, 437 (Tex. 1996) (citing cases); *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

A nonresident defendant's contacts may give rise to two types of personal jurisdiction. *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 227–28 (Tex. 1991). If the defendant has established continuous and systematic contacts with the forum, general jurisdiction is established regardless of whether the defendant's alleged liability arises from those contacts. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 796 (Tex. 2002); *CSR Ltd.*, 925 S.W.2d at 595. In contrast, when specific jurisdiction is alleged, courts focus the minimum-contacts analysis on the relationship among the defendant, the forum, *and* the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007). "Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum." *Id.* (internal brackets, quotation marks, and citations omitted).

## II. Specific Jurisdiction

Only specific jurisdiction is at issue in this original proceeding. Specific jurisdiction exists when (1) the defendant has "made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities [in the state]," *and* (2) the defendant's potential liability arose from or is related to those contacts.[1]

---

[1] Even if a nonresident defendant purposefully avails itself of the forum state, the exercise of specific jurisdiction is prohibited if the suit does not arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017).

*Id.* at 576. These requirements are often referred to as "purposeful availment" and "relatedness." *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 9, 14 (Tex. 2021).

## A. Purposeful Availment

To show purposeful availment in the specific jurisdiction analysis, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum market. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). The contacts "must be purposeful rather than random, fortuitous, or attenuated." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013) (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338–39 (Tex. 2009)).

In a products liability case, such as this one, merely showing that the defendant placed *the product* in the stream of commerce is insufficient on its own to establish purposeful availment: some additional conduct or "plus factor"—such as designing the product at issue for use in the target market—must also be demonstrated. *See Christianson*, 639 S.W.3d at 679; *see also Luciano*, 625 S.W.3d at 18 ("Additional conduct that [the defendant] tapped into the Texas market is evinced by its use of a Texas distribution center and a Texas sales representative to create a market to sell [the product] to local installers.").

## B. Relatedness

As for the relatedness requirement in the specific jurisdiction analysis, a plaintiff must demonstrate a "substantial connection" between the "defendant's forum contacts . . . and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. A special appearance must be granted when this connection is "too attenuated to satisfy specific jurisdiction's due-process concerns." *Id.* at 588.

## III. Rule 120a Discovery

Texas Rule of Civil Procedure 120a governs the procedures for making special appearances to contest the court's personal jurisdiction over the party. TEX. R. CIV. P. 120a. Among other things, the rule lists the materials that may form the basis of a trial court's special appearance ruling: "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3).

"General principles that limit the scope of discovery also apply equally to jurisdictional discovery." *Christianson*, 639 S.W.3d at 678. Additionally, in the jurisdictional context, it is not enough that the requested discovery "is reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). Rather, "[d]iscovery is limited to *matters directly relevant*" to the jurisdictional issue. *In re Doe*, 444 S.W.3d 603, 608 (Tex. 2014) (orig. proceeding) (emphasis added).

As the Texas Supreme Court recently explained in *Christianson Air Conditioning & Plumbing*, a products liability case, "information sought in jurisdictional discovery must be essential to prove at least one disputed factor that is necessary to the plaintiff's proposed theory or theories of personal jurisdiction." 639 S.W.3d at 678. In that case, the supreme court observed that simply inserting the phrase "in Texas" or "in Texas field conditions" into a topic, as the plaintiffs in that case did, would not make it essential to prove specific jurisdiction. *Id.* at 680. The court further noted that knowledge of how a product works "in Texas"—the subject of one of the disputed topics in that case—would merely show "awareness that the stream of commerce may or will sweep the product into the forum State"—an insufficient basis for specific jurisdiction. *See id.* By contrast, the court stated that "knowledge of, or tests concerning, how *a product at issue* functions in Texas field conditions may be essential in determining purposeful availment under a stream-of-commerce-plus theory if such knowledge or tests are tied to [the defendant's] intent to target the market in Texas." *See id.* (emphasis added). Likewise, any design work that a defendant did using knowledge of Texas field conditions may be essential in determining whether there is a substantial connection between the defendant's alleged contacts and a plaintiff's claims against it. *Id.*

## IV.  Application to the Facts

Real parties rest their personal jurisdiction arguments on specific jurisdiction using a stream-of-commerce-plus theory. Under this theory, each topic must target

–10–

discovery that is essential to prove (1) relators' purposeful availment (placement of the product at issue in the stream and "additional conduct") or (2) relatedness (substantial connection between the forum contacts and the litigation). *Id.*

Deposition topics 1 through 9 broadly request information about contacts concerning general "business purposes" which could cover a wide range of business-related matters that have nothing to do with the allegedly defective products involved in this case. Because real parties must show relators placed the product at issue in the stream of commerce and additional conduct to establish purposeful availment of the forum state, and a connection between the contacts with the forum and the claims, real parties are only entitled to information regarding contacts with Texas that have a connection with the allegedly defective products giving rise to relators' potential liability. *See, e.g.*, *id.* at 679. The topics' references to "business purposes" go well beyond the proper scope of the jurisdictional inquiry. In addition, with respect to topics 1 through 3 and 5 through 9, simply inserting the word "Texas" into the topics does not make them essential to prove specific jurisdiction. *See id.* at 680.

Moreover, topic 4, seeking information on "*any* hip arthroplasty device" that relators manufactured that were marketed in the "United States" is not limited to the components at issue in this case and to relators' contacts with Texas and, thus, is overly broad.

Topic 10 seeks information generally concerning Mark Waugh and his role and duties at Smith & Nephew Orthopaedics, Ltd. and is not narrowly tailored to the issue of jurisdiction.

Applying general discovery principles, we conclude the topics are too broad as they seek non-essential information that will not support their stream-of-commerce plus theory. *See In re CSX Corp.*, 124 S.W.3d 149, 152–53 (Tex. 2003) (orig. proceeding). Accordingly, the trial court clearly abused its discretion in ordering depositions of corporate representatives on these topics.

Because the corporate depositions cannot be untaken, relators are left without an adequate remedy by appeal. *See In re Millwork*, 631 S.W.3d 706, 715 (Tex. 2021) (orig. proceeding) (noting that once deposition has been taken, it cannot be untaken); *In re Skadden, Arps, Slate, Meagher & Flom LLP*, No. 02-21-00393-CV, 2022 WL 500036, at *5 (Tex. App.—Fort Worth Feb. 18, 2022, orig. proceeding) (mem. op.) ("Mandamus lies if a trial court permits a plaintiff to engage in discovery unrelated to a defendant's pending special appearance."). Accordingly, we conclude that relators have shown their entitlement to mandamus relief on all of the topics specified in the trial court's order.

## CONCLUSION

Because the district court committed a clear abuse of discretion by allowing discovery into the topics set forth in its May 13, 2022 order granting the motion to compel, we conditionally grant relators' request for mandamus relief. The writ will

issue only if the district court fails to vacate its order granting the motion to compel within fifteen days of the date of this opinion. We are confident that the trial court and the real parties, with the benefit of this opinion, will be able to tailor the discovery requests to relators, and possibly to Waugh individually, to limit the requests to the proper reach of jurisdiction and to assure that the costs associated with the jurisdictional discovery do not exceed the benefits of same. *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 315 (Tex. 2009) (orig. proceeding). Because we assume the trial court will comply with this opinion, we direct our clerk not to issue the writ of mandamus unless information is received that the district court has not so complied. We lift the stay issued by this Court on May 27, 2022.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

220495F.P05